## GRAND LODGE F. AND A. MASONS OF LOUISI-
## ANA *v.* NEW ORLEANS.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 111.  Argued January 19, 1897. — Decided March 15, 1897.

Act No. 225 of the legislature of Louisiana of March 15, 1855, exempting
the hall of the Grand Lodge from state and parish taxation, "so long as
it is occupied as a Grand Lodge of the F. & A. Masons," did not consti-
tute a contract between the State and the complainant, but was a mere
continuing gratuity which the legislature was at liberty to terminate or
withdraw at any time.

If such a law be a mere offer of bounty it may be withdrawn at any time,
although the recipients may have incurred expense on the faith of the
offer.

THIS was a petition originally filed in the Civil District
Court for the parish of Orleans by the Grand Lodge of the
F. & A. Masons of the State of Louisiana, to enjoin the city
of New Orleans from proceeding to sell, for the taxes of 1888,
1889 and 1890, certain property owned by the petitioner, and
claimed to be exempt from taxation.

The petition set forth that the Grand Lodge was incorpo-
rated by a perpetual charter, granted by the legislature in
1816; that petitioner was the owner of a lot of ground,
with buildings and improvements thereon, at the corner of
St. Charles and Perdido streets, known as the hall of the
Grand Lodge, etc., which property it had purchased in 1853
by a notarial act, in which was incorporated a resolution of
the Grand Lodge, which, in substance, devoted the entire net
revenues of such property "to the relief of worthy distressed
members of the order, their wives, children and families, and
as a permanent charitable fund"; that such resolution was in
strict accord with the objects of the institution, of which
the Grand Lodge is the superintending body or organiza-
tion, "the principles of which are charity and universal
benevolence," and "to the end thereof, that charitable insti-

tutions may be promoted," the act of incorporation was enacted; that further to promote this object the legislature, by an act (No. 255), approved March 15, 1855, acts of 1855, p. 270, exempted said hall from city and parish taxation, so long as it was occupied by the Grand Lodge of F. & A. Masons, which exemption was claimed to have become a contract between the State and the Grand Lodge so long as the property was owned and occupied by it. The petitioner alleged that the principles and objects of Free Masonry are still unchanged, and that the net revenues arising from the property have not been diverted; that the city now claims that the property is subject to taxation, and threatens to enforce the collection of the taxes.

The answer of the city was simply a general denial.

Upon the trial it appeared that the Grand Lodge was incorporated by act of March 18, 1816, with full power and authority to take, hold and enjoy real and personal property, etc.; that the hall was erected in the year 1845 for a commercial exchange, and was purchased by the Grand Lodge for a hall in 1853; that on March 15, 1855, the general assembly enacted that the building, whose location and name were given in the act, should be exempt from state and parish taxation so long as it was occupied as the Grand Lodge of the F. & A. Masons. It further appeared that the objects proposed by the institution were charity and universal benevolence; that contributions were exacted from each member of the order for the ordinary expenses of the lodge and as a fund for the purposes of charity, to be distributed as occasion required, and that from 1853 to the present time the whole of the revenue, except that used for insurance, repairs and current expenses, has been exclusively devoted to charitable purposes as stated in the charter and act of sale. These revenues averaged over $3000 per year.

It further appeared that in 1879 a new constitution was adopted by the State, of which article 207 was as follows: "The following property shall be exempt from taxation and no other, viz.: All public property, places of religious worship or burial, all charitable institutions; . . . provided, the

property so exempted be not used or leased for purposes of private or corporate profit or income."

Upon the hearing in the District Court, the property was held to be exempt from taxation, and an injunction granted. The city appealed to the Supreme Court, which reversed the decree of the District Court and dissolved the injunction. Upon a rehearing, the decree was amended by recognizing the exemption of that part of the property occupied by the grand and subordinate lodges of Masons, and in other respects the demand was rejected, and the case remanded to the court below with directions to hear evidence and ascertain what property was thus occupied, and what property was rented or used for private or corporate profit or income, and to pass upon and decide the relative values of that part of the property thus occupied by said Masons to that leased or used as aforesaid, that is, "from the assessed value of the property, viz., $60,000, must be deducted the value of the property exempted aforesaid."

The case having been remanded and reheard in the District Court, a new judgment was rendered in favor of the city for the city taxes of 1888, on an assessment of $20,000; of the year 1889, on an assessment of $10,000, and for the year 1890, on an assessment of $6200. The case was then appealed and reheard in the Supreme Court, and the judgment of the District Court affirmed. Whereupon petitioner sued out this writ of error.

*Mr. Charles F. Buck* for plaintiff in error. *Mr. J. Q. A. Fellows* was on his brief.

*Mr. Samuel L. Gilmore* for defendant in error. *Mr. W. R. Sommerville* was on his brief.

*Mr. M. J. Cunningham,* Attorney General of the State of Louisiana, *Mr. F. C. Zacharie* and *Mr. Alexander Porter Morse* filed a brief on behalf of the State.

MR. JUSTICE BROWN delivered the opinion of the court.

The only question in this case is whether the act of 1855, exempting the hall of the Grand Lodge from state and parish taxation, "so long as it is occupied as a Grand Lodge of the F. & A. Masons," constitutes a contract between the State and the complainant, or was a mere continuing gratuity which the legislature was at liberty to terminate or withdraw at any time, and which the State did subsequently withdraw by the adoption of a constitution, which secured the exemption of the property of "all charitable institutions,  .  .  .  . provided, the property so exempted be not used or leased for the purposes of private or corporate profit or income." It appeared in this case that, during the years in which the assessments complained of were made, a part of the ground floor of the exempted property was rented for stores; that some of the rooms were rented for other like purposes, and that from these sources a large amount of corporate income had been realized, although that income was devoted to charitable purposes.

If the act of 1855 be regarded as a contract within the case of *Dartmouth College* v. *Woodward*, 4 Wheat. 518, then it is clear that the exemption from taxation was valid, and beyond the power of the legislature to abrogate. *State Bank* v. *Knoop*, 16 How. 369; *New Jersey* v. *Wilson*, 7 Cranch, 164; *Gordon* v. *Appeal Tax Court*, 3 How. 133; *Dodge* v. *Woolsey*, 18 How. 331; *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436; *McGee* v. *Mathis*, 4 Wall. 143; *Wilmington Railroad* v. *Reid*, 13 Wall. 264; *Humphrey* v. *Pegues*, 16 Wall. 244; *Farrington* v. *Tennessee*, 95 U. S. 679; *New Jersey* v. *Yard*, 95 U. S. 104.

To make such a contract, however, there is the same necessity for a consideration that there would be if it were a contract between private parties. If the law be a mere offer of a bounty, it may be withdrawn at any time, notwithstanding the recipients of such bounty may have incurred expense upon the faith of such offer. Thus, the legislature of the State of Michigan, desiring to encourage the manufacture of salt, which had been recently discovered in the Saginaw Valley, in 1859, offered exemption from taxation and a bounty of ten cents per bushel to all individuals, companies or corporations formed

for the purpose of boring for and manufacturing salt. It was held in the *Salt Company* v. *East Saginaw*, 13 Wall. 373, that, if the salt company plaintiff had been incorporated by a special charter, containing the provision that its property should be exempt from taxation, and that charter had been accepted and acted upon, it would have constituted a contract; but that this was a bounty offered to *all* corporations and individuals who should manufacture salt, and there was no pledge that it should not be repealed at any time; that, as long as it remained a law, every individual or corporation was at liberty to avail himself or itself of its advantages, by complying with its terms, and doing the things which it promised to reward; but was also at liberty at any time to abandon such a course; that it was a matter purely voluntary upon both sides — giving to one party the power to abandon the manufacture of salt, and to the other to repeal the exemption from taxation and the bounty of ten cents per bushel. The consequence of a different decision in this case might easily have become disastrous, since the arguments which were urged upon this court at that time would have been equally forceful at any time thereafter, and the State might have found itself bound by a perpetual pledge to pay ten cents upon every bushel of salt thereafter manufactured by the companies, which had embarked in the enterprise under the encouragement of the bounty. A like ruling was made in *Welch* v. *Cook*, 97 U. S. 541, in which an act of the legislature of the District of Columbia, exempting from general taxation for ten years such real and personal property as might be employed within the District for manufacturing purposes, did not create an irrepealable contract with the owners of such property, but merely conferred a bounty, liable at any time to be withdrawn.

Complainant, while admitting the soundness of this proposition, claims that the requisite consideration existed in the deed by which the property was acquired, wherein the Grand Lodge solemnly declared and proclaimed said purchase to be made for the purpose and object of creating a fund for charitable purposes, in the relief of worthy distressed members of

the order, their wives, children and families; and solemnly pledged itself that as soon as the said property should be paid for, the whole of the revenue which might be derived from it, after deducting necessary and unavoidable expenses on its account, should be devoted to those objects.

This consideration, however, was not one upon the faith of which the legislature granted the exemption, since the deed had already been in existence for two years, and the property had been purchased under the resolution of the lodge, adopted January 27, 1853, to the same effect as the above recital in the deed. While subscriptions for the purchase of the property may have been obtained upon the faith of this resolution, it cannot be said to have constituted a consideration for the exemption. The alleged contract for exemption was not contained in the charter — as in other cases where such exemption has been sustained — since the lodge had already pledged its revenues to charitable purposes; and when the act was passed it gave no additional pledge, and promised nothing which it had not already promised, and was bound in honor to perform. If additional subscriptions were obtained upon the faith of the act, the subscribers were bound to take notice of the fact that the legislature was at liberty to repeal the act at any time, or, that the people might, in the exercise of their sovereign power, nullify it by an amendment to the constitution.

In the *Home of the Friendless* v. *Rouse*, 8 Wall. 430, relied upon by the plaintiff in error, the exemption was contained in the original charter of the Home of the Friendless, which purported in its preamble to be granted for the purpose of encouraging the undertaking, and enabling the parties engaged therein more fully and effectually to accomplish their laudable purpose. The exemption was offered not in view of a consideration which had already passed, but for the purpose of inducing the incorporators to accept the charter and to carry out the enterprise.

So in *Asylum* v. *New Orleans*, 105 U. S. 362, the institution was incorporated under an act of the general assembly, which declared that all the property belonging to the institution

should be exempted from all taxation. The question turned upon the exemption of certain property which was devised to it twenty years after it was incorporated, the revenues of which were applied to enable it to carry on its work; but it was held that the contract applied not only to property in existence when the charter was granted, nor only to that which was in existence when the constitution of 1868 was adopted, but to all which might afterwards be acquired in the due fulfilment of the purposes of the institution.

We are of opinion that the act in question in this case was one which the legislature might properly enact as a matter of public policy, and in aid of a beneficent purpose; but that it was a mere gratuity or bounty which it was competent at any time to terminate, and that this was done by Art. 207 of the Constitution of 1879. The case is practically upon all fours with that of *The Rector of Christ Church* v. *Philadelphia*, 24 How. 300, in which the legislature of Pennsylvania enacted that "the real property, including ground rents, *now belonging and payable* to Christ Church Hospital, in the city of Philadelphia, so long as the same shall continue to belong to the. said hospital, shall be and remain free from taxes." Eighteen years thereafter, the legislature enacted that all property belonging to any association, then exempt from taxation, other than that in actual use and occupation of such association, should thereafter be subject to taxation. It was held that this last law was not in violation of the Constitution of the United States; that the former act of 1833 was a mere privilege existing *bene placitum*, and might be revoked at the pleasure of the sovereign. It would seem from this case that the hospital had been incorporated long before the act containing the exemption was passed, as that act recited that the hospital "had for many years afforded an asylum for numerous poor and distressed widows," and that the exemption was granted on account of its means being curtailed by decay of the buildings, and the increased burden of taxation. So in *Tucker* v. *Ferguson*, 22 Wall. 527, and in *West Wisconsin Railway* v. *Board of Supervisors*, 93 U. S. 595, it was held that an act of the legislature exempting property of all railroads

from taxation was not a contract to exempt, unless there were a consideration for the act; that the promise of a gratuity, spontaneously made, may be kept, changed or recalled at pleasure, and that this rule applied to the agreements of States, made without consideration, as well as to those of persons. See also *Newton* v. *Commissioners*, 100 U. S. 548, 561, and *People* v. *Roper*, 35 N. Y. 629, wherein a law, providing that persons who had served seven years in the militia and had been honorably discharged, were entitled to perpetual immunity from taxation to the extent of $500 each, was held to be repealable at any time by the legislature.

The act of 1855, now in question, clearly falls within the latter class of gratuities or bounties, which are subject to the will of the legislature, and may be withdrawn at any time.

The decree of the court below was, therefore, right, and will be

*Affirmed.*