No. 12,902.

MORGAN'S LOUISIANA AND TEXAS RAILROAD AND STEAMSHIP COMPANY VS. CLARENCE C. BARTON.

SYLLABUS.

(1) The plaintiff in expropriation is entitled to an appeal on the issue of the value of the property when he claims the value is excessive, although the party seeking the expropriation has not paid into court the amount fixed by the commissioners, or jury, that payment not being the condition for the appeal.

(2) The court again affirms the appropriate weight of the finding of the commissioners, or jury, but this court will review the finding when in the light of the testimony the same as to value is plainly excessive.

(3) The title of a legislative act to incorporate "the railroad corporation, and define its powers" covers the power to construct and extend short branch roads connecting the main line with parishes adjacent to the main line.

(4) So the title including the power to expropriate, will be deemed to cover the method of expropriation prescribed by the statute.

(5) The court construes the plaintiff's charter (Acts 1877, Reg. Session, p. 137) to authorize the construction of branch roads on its main line from New Orleans.

A PPEAL from the Twentieth Judicial District Court for the Parish of Assumption. *Guion, J.*

*Clay Knobloch* (Denegre, Blair & Denegre of Counsel) for Plaintiff and Appellant.

*Beattie & Beattie* for Defendant and Appellee.

Argued and submitted January 11, 1899.
Opinion handed down February 6, 1899.
Judgment amended and rehearing refused May 29, 1899.

On the application for rehearing by BLANCHARD, J.

---

The opinion of the court was delivered by

[*] MILLER, J. The plaintiff, seeking to expropriate defendant's property, takes·this appeal from the judgment based on an award by the commissioners fixing the value of the land, at an amount the plaintiff claims is excessive.

The defendant moves to dismiss the appeal. He takes the ground that as the plaintiff is now under no obligation to pay for the land, the judgment merely fixing the value which he has declined to pay, the conclusion of the argument is that the decree here must leave it optional for the plaintiff whether or not to pay for the land, and hence it is urged we have no practical issue to determine, or as it is expressed we have only "a moot case". The plaintiff's demand is for the land on payment of its value. His complaint is the denial of that demand, by reason of the requirement of the judgment that plaintiff shall pay more than the actual value. It seems to us that the right of plaintiff to appeal from this judgment, which if erroneous, as the company maintains, denies an expropriation secured by law, cannot be disputed. Revised Statutes, sections 1479, 1483, etc. Charter Company, Act 37 of 1877, Regular Session; Railroad vs. Barton, 43rd Ann., 176; Telegraph Co. vs. Railroad Co., 49th Ann., 1281. The motion to dismiss is denied.

The defendant contends that under the plaintiffs' charter it has no. power to expropriate for the purpose assigned in the petition; the construction of a branch road. In support of this contention we are referred to the defendant's charter entitled: "An act to incorporate the Morgan's Louisiana and Texas Rail Road and Steamship Company," etc. Acts of 1877, No. 37, Regular Session. It is claimed that the title does not express the objects of the act. We presume by this is intended that the title does not cover the authority to construct branch roads, nor to authorize the method of expropriation through the medium of the special tribunal directed by the charter. Sections 16, 17, et seq. Included in the title we find "to incorporate the Morgan's Louisiana and Texas Railroad Company, * * * to define the powers of said company, to authorize the expropriation of. lands * * and to vest in said company all. powers incidental and necessary for the building and maintenance of railroads to the States of Texas, North Louisiana and Arkansas." When the act was passed,

1340 SUPREME COURT OF LOUISIANA.

Morgan's Louisiana & Texas R. R. Co. vs. Barton.

Charles Morgan and his associates had already constructed part of the line proposed in the title of the act. The road, for the construction of which the plaintiff now seeks the land in controversy, is to be an extension of one of the connecting branch lines of the main road of the corporation. These branch lines, affording greater facilities to shippers of the produce of the parishes adjacent to the road, may well be deemed aids for the accomplishment of the objects of the corporation. The road owned by the individuals before the act of incorporation was constructed to afford railroad transportation for the produce of what are known as the sugar parishes through which the main line runs, and the branch road or its extension is now proposed for uniting the main line with an interior adjoining parish. Our jurisprudence has not favored that construction which exacts that mere incidents of the subject shall find expression in the title of the act. Our predecessors held, in a case presenting a similar question, that the authority to construct a short branch line was included in the purpose to incorporate the main road expressed in the title. We reach the same conclusion in respect to the title called in question in this case. Constitutions of 1868, Article 114; of 1879, Article 29; of 1898, Article 31; Succession of Lanzetti, 9th Ann., 329; Railroad vs. Wooten, 36th Ann., 441; Succession of Saloy, 44th Ann., 442; Municipality No. Three vs. Michoud, 6th Ann., 605. The argument also maintains that the charter itself gives no power to construct branch roads. The corporation was organized to maintain and operate the railroad already completed to Morgan City, and to continue the road from Morgan City to Texas. In the second paragraph of the fifth section of the act, we find the power given "to locate, construct, own, maintain and use such branch roads as the Directors may deem requisite." The contention that this power is to be deemed applicable only to branches on the line from Morgan City to Texas, and not to branch roads on the main line from New Orleans to Morgan City, is, we think, incapable of support. The argument directs our attention to the principle that enumerated powers given to a corporation are deemed prohibitive of other and distinct powers, and the argument also relies on the rule of construction that solves in favor of the public doubts arising on the interpretation of the power of a corporation. Minturn vs. Larue, 23rd Howard, p. 436; Thomas vs. Railroad Company, 101 U. S., 81. In our view, however, the power to build or extend a short branch line as is proposed in this case, is not a distinct and different

power from those authorized by the act and its title; nor can we hold that the power under discussion given expressly by the fifth section, is susceptible of the doubt the argument supposes. The title gives the corporation the power to expropriate, the body of the act provides a method of expropriation. Section 17 *et seq.* The argument, in our opinion, is not successful in its insistence that the method of expropriation is not fairly covered by the power the title expresses.

We appreciate that in this class of cases the finding of the commissioners, residents, and property owners of the vicinage of the property sought to be expropriated, is entitled to great weight. On the other hand, we must recognize that the right of appeal from the judgment resting on their finding is secured to plaintiff by the Constitution and laws. Our jurisprudence according due weight to the award, equally affirms the power and duty of this court to give relief when the award is manifestly excessive. Revised Statutes, Sections 1479, 1483, *et seq.* Gay vs. N. O. Pacific Railway Co., 32nd Ann., 277; In the Matter of the Morgan R. R. and S. S. Co. Praying for Appointment of Commissioners, 32nd Ann., 374; Telegraph Co. vs. Railroad Co., 49th Ann., 1281.

The commissioners allowed as incidental damages, loss of crops, the cost of new bridges and the damage for changing headlands. The plaintiff contends against these items that the obligation is on the plaintiff exerting the right of expropriation to leave or place the property in condition the same as existed before the expropriation. Hence, it is contended the defendant is to be content with the obligation of plaintiff in this respect. This obligation of plaintiff is of general recognition, but we do not understand, therefore, that the defendant is not entitled to demand compensation in this suit for the damages he sustains incident to the expropriation. The plaintiff's suit was brought in the early summer of 1897. It may be that when the right is exercised under this judgment, there will be no crops on the land, or in any way affected by the expropriation. We find no basis to sustain the award in this respect. The damage in respect to headlands, if we correctly appreciate, refers to the change that will be rendered in the turn rows or spaces at the end of each cut intersected by the railroad laid through defendant's field. We can appreciate that other spaces or turn rows will have to be provided for those made useless. The amount awarded by the commissioners is two hundred and fifty dollars, embracing besides loss of crop, not at all certain to be sus-

tained. We have no basis in the record to adjust the loss that may result from the substitution of headlands for those displaced, but will, however, reserve the defendant's rights in,            .. The items for new bridges and removing old bridges, the commissioners on the testimony in the record have fixed at three hundred and thirty-nine dollars, which allowance we do not feel authorized to disturb.

On the question of the value of the land, eight 34-100 acres, the commissioners have allowed twenty-five hundred dollars, or three hundred dollars per acre. The defendant has put in the record the testimony of witnesses claimed to support the allowance. Without disregarding this testimony, it is sufficient to say that the opinions of the witnesses do not seem to be based on any fact calculated to show the value of the land. It is the right of plaintiff to expropriate for the value of the land, and, of course, the judgment of competent parties based on facts within their knowledge or experience must have weight, but testimony from witnesses whose ideas of value appear to be controlled by an aversion to railroads going through their property, or from an indisposition to sell at any price, naturally can exert little, if any influence on the question the court is called on to decide. We think we have indicated the character of defendant's testimony. On the other hand the plaintiff has placed before us the titles of defendant of recent date showing the price paid by him for the entire body of land of which the eight acres are part; the acts of sale of land in the same neighborhood, and of the same quality; the assessment of defendant's property, and other testimony on this issue of value. We can understand that the value of high or ridge land in the defendant's field is not to be adjusted by the price per acre obtained by dividing the total price by the entire acreage bought, embracing many acres of swamp or low land. But, if, suppose, the defendants' purchase was only ridge or high land, the quantity of which is fixed by the tesimony, the fair inference is the price he would have paid would be less than that paid for all ridge as well as low land. On this line of examination we find the award gives an amount for the land in palpable excess of any value that can be deduced from the price paid plaintiff. Giving all possible weight, or rather restricting the testimony of the plaintiffs' witnesses to its due influence, and giving, we think, necessary effect to the acts by which defendant purchased, the acts of sale of other land, the assessment of value, with due allowance for under assessment, and the other testimony in the record, we reach the

conclusion that the award gives two-thirds more than the value of the land. We think this a plain case of an excessive award against which the appeal must give relief. We fix the value of the land at eight hundred and thirty-three 33-100 dollars.

It is therefore ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed, and it is now ordered, and decreed, that the land sought to be expropriated, to-wit, eight acres, be and is hereby adjudged to the plaintiffs on the payment by plaintiffs of eleven hundred and thirty-nine dollars ($1,139.00), reserving plaintiff's rights in respect to the damage, if any, for changes of headlands or loss of crops on existing headlands; the costs of appeal to be borne by defendant, those of the lower court to be paid by plaintiff.

## ON APPLICATION FOR REHEARING.

BLANCHARD, J.    It is again urged upon us that plaintiff company could not appeal from the judgment complained of until it had deposited in court the amount of award of the commissioners. The ground of this contention is that until the sum of the award is deposited it remains optional with plaintiff company whether or not it will proceed further—no means being afforded of compelling its acceptance and execution of the decree.

The statute of expropriation authorizes the plaintiff in a condemnation proceeding, to whom a judgment of expropriation is given and against whom an award is made of a sum ascertained and declared to be the value of the property taken for public purposes, and damages, to deposit such sum in court, take possession of the premises and proceed with the erection or construction of the work of public improvement, and this notwithstanding an appeal is taken. The reason for this manifestly is that the work may not be impeded by the delays incident to appeal. But we do not understand that plaintiff is required to make this deposit before he may exercise the right of appeal. It may well be that the award for the property and damages may be so great as to defeat the public work in contemplation, that the plaintiff would be unable to proceed if held to the award, that it might become necessary because of the great cost to change the route of its line of road, etc. Because of his inability or unwillingness to pay the award is he to be deprived of his right of appeal to test its correctness?

Suppose the appellate court were to decline to interfere, holding the award reasonable and affirming the judgment, and on this plaintiff were to refuse to take the property and pay the price, in what way is defendant injured? He has resisted the expropriation and in this way he realizes the practical success of his efforts to prevent the taking of his property. The costs of the expropriation proceedings are required to be paid by plaintiff, and thus no loss arises to defendant. He is, therefore, without interest to complain that plaintiff may not, after all, take the property. The motion to dismiss the appeal was properly denied.

The other grounds for rehearing are sufficiently covered by the argument of the opinion complained of, and need not be gone over again. Suffice it to say, that we see no sufficient reason for not adhering to our former conclusion in regard to same.

But an error of calculation made to the injury of defendant he is entitled to have corrected. The decision of the court awarded $339 as the value of bridge, etc., and $822.33 as the value, etc., of the land taken. These two sums aggregate $1,172.33, whereas the decree of the court figured the same at $1,139.

An application for rehearing filed also herein by plaintiff calls attention to the necessity of remodeling the decree of the court in certain respects pointed out.

Without an argumentative statement of the same, we will redraft the decree so as to cover the points as far as we think it advisable to do so.

We think this a case where the owner should receive his just compensation clear of any expense of the proceedings, and, accordingly, costs of appeal must be added to the amount herein allowed. Lewis on Eminent Domain, Section 562. It would be different where the owner appealed and failed to secure an increase of award.

It is, therefore, ordered that the decree of this court herein be amended so as to read as follows:—

That the judgment appealed from be avoided and reversed, and it is now ordered and decreed that the tract or strip of land sued for belonging to defendant, C. C. Barton, and more fully described as a strip of land seventy-five feet wide and four thousand, nine hundred and forty-two feet long, containing a superficial area of eight acres and thirty-four one hundredths of an acre and running through a certain plantation of said C. C. Barton, on the right bank of Bayou

Lafourche, and about three miles below the town of Napoleonville, in the parish of Assumption, bounded below or east by the lands of the Oakly Planting Company and above or west by the lands of H. Arconeaux—the said strip of land extending from the upper to the lower levee boundaries of said plantation of defendant Barton and being accurately shown in the blue print map marked "Exhibit A" (in the record of this suit) between the points A and B thereon— be and the same is hereby vested in plaintiff, Morgan's Louisiana and Texas Railroad and Steamship Company, on the deposit by said plaintiff of the sum of eleven hundred and seventy-two dollars and thirty-three cents, in the bank of Napoleonville to the credit of this judgment, free and clear of all mortgages, liens and other incumbrances recorded against or affecting the said property herein awarded to plaintiff—said sum so deposited to await the action of the court a qua in respect to the distribution thereof pursuant to the provisions of Section 710 of the Revised Statutes of Louisiana.

It is further ordered, etc., that upon the deposit of the aforesaid sum in the Bank of Napoleonville, plaintiff's right to take possession of the strip of land aforesaid and to proceed with the construction of its railroad at once attaches.

It is further ordered, etc., that defendant's rights in respect to damages, if any, for changes of headlands and turn rows and also of crops on existing headlands and turn rows, or new ones to be formed, be reserved to him, not however to be construed as retarding the execution otherwise of this decree.

It is further ordered, etc., that the costs of both courts be taxed against plaintiff company.

Rehearing refused.

MONROE, J., takes no part, the case having been submitted prior to his appointment as one of the justices of this court.