Statement of the Case.
NIOHOLLS, C. J.
The plaintiff alleged that it was an asylum for the relief of destitute females and helpless children of all denominations, and was created a corporation under and by virtue of Act No. 253 of the General Assembly of Louisiana for the year 1853, for the purposes stated.
That by its charter petitioner was given power to take, purchase, possess, and enjoy all kinds of property, real or personal, by gift, grant, sale, bequest, exchange, or by *593 any mode of conveyance or transfer whatsoever, and the same to sell, convey, or dispose of under the restrictions therein provided, and was directed to administer the same for the furtherance of the object of the corporation and in accordance with the conditions of the charter.
That in the said charter it was further provided “that the said corporation shall enjoy the same exemption from taxation as was enacted in favor of the Orphan Boys’ xYsylum of New Orleans by the act approved March 12tb, 1836, entitled an ‘Act for the relief of the Orphan Boys’ Asylum of New Orleans’ [Acts 1836, p. 135]”; that the act relating to the Orphan Boys’ Asylum of New Orleans referred to declares as follows: “All the property, real and personal, belonging to the •Orphan Boys’ Asylum of New Orleans be and the same is hereby exempted from all taxation either by the state, parish or city in which it is situated, any law to the contrary notwithstanding.”
That under the charter thus granted petitioner was duly organized as a corporation, and by means of donations erected an asylum, and had always since then fulfilled the objects of its organization.
That in accordance with its charter petitioner acquired certain real estate in the city of New Orleans.
That the said property was held by it in trust for the purposes for which it was incorporated, and the revenues thereof were applied to those purposes.
That under the act of the Legislature under which it was incorporated, the said property was exempt from all taxation either by the state, parish, or city; that, notwithstanding the said exemption, the board of state tax assessors for the parish of Orleans had assessed the said property for state taxes and Orleans levee district taxes for the years 1895, 1896, 1897, 1898, 1899, and 1900; that pretending to proceed by virtue of authority vested in him by the Constitution and laws of the state of Louisiana, C. Harrison Parker, state tax collector for the First I)istrict of the city of New Orleans, had advertised the same for sale.
Petitioner prayed for an injunction against said sale, and that there be judgment in its favor perpetuating the injunction, and decreeing the assessments of its said property for the years 1895, 1896, 1897, 1898, 1899, and 1900, to be null and void, and ordering the same canceled and erased from the assessment books of the parish and those of the tax collector of the First District.
Before the case went to trial plaintiff filed a supplemental petition, attacking on the same grounds a subsequent assessment of its property for the year 1901. It prayed to have said assessment declared null, and the same erased from the books.
The board of assessors and the state tax collector were cited upon both petitions.
A preliminary injunction issued as prayed for.
The board of assessors and the state tax collector answered, pleading first the general issue. They denied that plaintiff was entitled to the relief asked, because the acts of the Legislature by which the exemptions were granted were ultra vires the Legislature, null, and void. They prayed that plaintiff’s demands be rejected, and that judgment be rendered against it for the taxes assessed, interest, and costs and attorneys’ fees.
The district court perpetuated the injunction, decreed the assessments on the property for the years 1895 to 1900 (both inclusive) to be null and void, and ordered their erasure from the books.
The board of assessors and the state tax collector appealed.
In an action brought by the city of New Orleans in 1879 it sought to have enforced city taxes levied for the years 1871 on the same property which is sought to be subjected in this litigation to the payment of state taxes. In the suit mentioned, defendant resisted payment of the taxes on the ground of exemption under its charter as a contract. The district court rendered judgment in favor of the city, and the judgment was affirmed by this court in an opinion reported in 31 La. Ann. 292. The case was carried to the Supreme Court of the United States on a writ of error, and by that court the judgment of the state courts was reversed. 105 U. S. 366, 26 L. Ed. 1128.
Opinion.
In its judgment the Supreme Court of the United States used the following language:
“The tax in question was imposed in 1876 *595 under the supposed authority of the Constitution of 1808 and legislation adopted in pursuance thereof. Article 118 of that Constitution declares as follows: ‘Taxation shall he equal and uniform throughout the state. All property shall be taxed in proportion to its value to be ascertained as directed by law. The General Assembly shall have power to exempt from taxation, property actually used for church, school or charitable purposes.’ In conformity with this provision the Legislature of Louisiana, in 1871, passed a law declaring that all taxes levied by the city of New Orleans shall be assessed equally upon every description of property, both real and personal, but by another act, passed at the same session, it was declared that public hospitals, asylums, poorhouses, and all other charitable institutions for the relief of indigent and afflicted persons, and the lots of ground appurtenant thereto, and all their furniture and equipments, so long as the same shall be used for that purpose only, shall be exempt from taxation.”
The court noticed several cases cited by counsel for the city, supposed to be favorable to their views. Referring to these it said: “In these cases the exemption granted was held to be gratuitous on the part of the state, no consideration passing therefor from the companies. It was no part of their charters of incorporation, and therefore formed no consideration for their acceptance, whereas in the present case the exemption was expressed in the charter itself, and was one of the inducements offered for the acceptance and for making donations for the establishment of the institution. It is also said that to constitute a contract the grant ought to be clear and free from all ambiguity and doubt, and not susceptible of a different construction. We think it is so in this case. The contract is not a matter of inference or presumption. It is distinctly expressed in the act of incorporation. Indeed, a clearer case could hardly be made. The addition" of a declaration that the exemption given should not be withdrawn would not have added to its force. * * * Where the language is clear and the intention to grant the exemption apparent, the court has never hesitated to give it force and effect. And, as before said, we think it difficult to conceive a grant more clearly expressed than that in the present ease, and, unless we are disposed to reverse the previous decisions of this court, we cannot hesitate what judgment we ought to render. We are of the opinion that the imposition of the tax in question, contrary to the express terms of the charter, and without any provision for compensation or indemnity, was not a legitimate exercise of the power of dissolution reserved in the Code, and that article 118 of the Constitution of 1868, and the legislative act by virtue of which the said tax was imposed, as construed and -applied to the circumstances of this case, are in violation of the tenth section of article 1 of the Constitution of the United States.”
The grounds upon which it was claimed that the right of exemption no longer existed were that, although the revenues of the cotton press on which the assessment was made were applied to keeping and maintaining the objects of charity mentioned in the plaintiff’s act of incorporation, viz., to the support and maintenance and relief of destitute females and helpless children of all religious denominations, as intended by the charter, and that said asylum was and had been since its organization in active and efficient operation, there were no inmates of the asylum kept upon the premises.
No attempt was made either by the city or state authorities, after this judgment was rendered, to assess taxes upon this property, until the present action was instituted by the state tax collector of the First District of New Orleans.
His counsel refers to the decision of the Supreme Court of the United States just referred to, but he asserts that that judgment is not conclusive, for several reasons. The first reason assigned is that that suit was determined between the asylum and the city authorities, while the present one is between the asylum and the state authorities. The second is that in that suit the issue raised was as to the effect upon the rights of parties of a Constitution adopted after the incorporation, and of legislation enacted under the later Constitution, whereas in the present case the state was urging that under the Constitution of 1815 (in force at the time the asylum was chartered and the legislation then in force) the act of incorporation *597 itself was null and void, as' being contrary to the then existing Constitution, both as to substance and to form.
The state authorities did not set out in their pleadings, as they should have done, the particular grounds upon which they based their contentions. We only come to a knowledge of their position through the brief filed on their behalf.
They urge that at the time Act No. 253 of 1853 was passed (the charter of St. Anna’s Asylum), the Constitution of 1845 was still in force. That article 118 of that Constitution declared that “every law .enacted by the Legislature should embrace but one object and that shall be expressed in the title,” and by article 127 that “taxation shall be equal and uniform throughout the state. After the year 1848 all property on which taxes may be levied in this state shall be taxed in proportion to its value to be ascertained by law. No one species of property shall be taxed higher than another species of property of equal value on which taxes shall be levied: the Legislature shall have the power to levy an income tax and to tax all persons pursuing any occupation, trade or profession.” They also urge that at the time the asylum's act of incorporation was passed, Act No. 224 (the revenue act of 1847) was in force. That the Legislature therein classed the taxable property on which taxes should be levied, and fixed the exemptions in section 2 as follows:
“Fourth. Public hospitals, asylums, poor houses and all other charitable institutions for the relief of the indigent and afflicted persons and the lots appurtenant thereto with all their furniture and equipments so long as the same shall be used for that purpose only.”
Starting with these premises, counsel in their brief say: “It is not contended that the Legislature of 1847 could not have made the exemption more liberal than the section quoted provides. It could have provided, as the charter did, that all property of charitable institutions should be exempted, but it is submitted that, having established that certain charitable institutions were not exempt on all their property, it could not by a separate act give to one particular institution an exemption of all its property in violation of the provision of the Constitution which required that ‘taxation should be equal and uniform’ on all property on which taxes should be levied.”
It is claimed, therefore, that the alleged contractual exemption relied on was beyond the power of the Legislature to grant, and did not create a contract protected by the Constitution of the United States. The classification of property in the revenue act of 1847 under the constitution of 1845 on “which taxes should be levied” existed until the re-enactment of the revenue of 1853, which did not change the classification Act No. 253 of 1853 (the charter of the plaintiff), giving it, in section 6, an exemption on all its property, while leaving other charitable institutions liable for taxes on property not in use, while the Constitution required “equality and uniformity,” was to that extent ultra vires, hence not written. State v. Poydras’ Heirs, 9 La. Ann. 167; State v. Lathrop, 10 La. Ann. 402; Halloway v. Police Jury, 16 La. Ann. 204; Parker v. Ins. Co., 42 La. Ann. 431, 8 South. 618.
Referring to the other constitutional objection raised in their brief, counsel say:
“The title to Act No. 253 of 1853 simply indicates the creation of the corporation known as the St. Anna’s Asylum. It is submitted that the exemption from taxation of all its property, present and future, was not germane to the object of the act.
“The exemption from taxation is pro tanto a contribution to the grantee, and is an indirect appropriation under the Constitution. An appropriation in the act of incorporation would have been void, for the reason that it would constitute two objects in the act, and would be violative of the constitutional prohibitions.
“Of cotu'se we appreciate that the appropriation in such act would be violative of other prohibitions, but it would likewise be considered null, and therefore not written, under article 115 quoted. Is the grant of exemption germane to an act of incorporation? It is convenient, but not essential, and hence not germane to the act.
“A law may be broader than its title and not be constitutional. Such portions of the law as are not expressed in the title are null and void, and the rest is valid. State v. *599 Crowley, 33 La. Ann. 782; State v. Dalon, 35 La. Ann. 1141; Lewis v. Judge, 44 La. Ann. 90 (10 South. 400).”
No “contract” haying been created by the act of incorporation, the exemption was gratuitous, and might be rescinded by the Legislature, and has been repealed and prohibited by our Constitution. Grand Lodge Masons v. City of New Orleans, 44 La. Ann. 659, 11 South. 148; Grand Lodge of State of Louisiana v. City of New Orleans, 166 U. S. 143, 17 Sup. Ct. 523, 41 L. Ed. 951; Cunningham v. Board, 52 La. Ann. 223, 26 South. 872.
Referring to the objections urged to the title of the act incorporating the asylum, appellee calls the attention of the court to Cooley’s Constitutional Limitations, page 144; to Walker v. Caldwell, 4 La. Ann. 297; Med. Examiners v. Fowler, 50 La. Ann. 1365, 24 South. 809; State v. Ackerman, 51 La. Ann. 1218, 26 South. 80; Morgan’s R. R. Co. v. Barton, 51 La. Ann. 1340, 26 South. 271; Railroad Co. v. Wooten, 36 La. Ann. 442; Am. Printing House v. Dupuy, 37 La. Ann. 191; San Antonio v. Mehaffy, 96 U. S. 312, 24 L. Ed. 816; Jonesboro v. Cairo, 110 U. S. 192, 4 Sup. Ct. 67, 28 L. Ed. 116; Mahomet v. Quackenbush, 117 U. S. 508, 6 Sup. Ct. 858, 29 L. Ed. 982; and especially to Crescent City Gas Light Co. v. N. O. Gas Light Co., 27 La. Ann. 138; Railroad v. Wooten, 36 La. Ann. 442; and Montclair v. Ransdell, 107 U. S. 147-155, 2 Sup. Ct. 391, 397, 27 L. Ed. 431. In the latter ease the Supreme Court of the United States used the following language: “The powers which the township of Montclair is authorized to exert, however varied or extended, constitute, within the meaning of the constitution, one object, which is fairly expressed in a title showing the legislative purpose to establish a new or independent township. ‘It is not intended by the Constitution of New Jersey that the title to an act should embody a detailed statement, nor be an index or abstract of its contents. The one general object— the creation of an independent municipality —being expressed in the title, the act in question properly enbraced all the means or instrumentalities to be employed in accomplishing that object. As the state Constitution has not indicated the degree of particularity necessary to express in its title the one object of an act, the courts should not embarrass legislation by technical interpretations based upon mere form or phraseology. The objections should be grave, and the conflict between the statute and the Constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraced more than one object; that it was not sufficiently expressed by the title.”
In Crescent City Gas Light Co. v. New Orleans Gas Light Co., 27 La. Ann. 146, this eom't was called upon to decide whether an act of the General Assembly entitled, “An act incorporating the Crescent City Gas Light Conqjany,” and conferring on it the sole and exclusive right to make and vend illuminating gas in the city of New Orleans for 50 years from 1st of April, 1875, was repugnant to article 114 of the Constitution of 1868, then in force, requiring the object or objects of every law to be embraced in the title. The court said: “The main objection is as to the title of the act of 20th April, 1870; that its title, ‘An act to incorporate the Crescent City Gas Light Company’ does not cover the monopoly feature contained in the eighth section thereof; that there is nothing in it indicating the purpose to grant the sole and exclusive privilege to make and vend gas in the city of New Orleans for fifty years. * * * The object of the act, as stated in the title, was ‘to incorporate the Crescent City Gas Light Company.’ To incorporate a company is to create it with certain powers and privileges. Those powers and privileges need not be detailed, for, if they were, the title would be as long as the act. The title of the act disclosed the creation of a gas company. This was sufficient to cover the monopoly or exclusive privilege to make and vend gas. The Louisiana Lottery Co. v. Richoux, 23 La. Ann. 743 [8 Am. Rep. 602]; State ex rel. Belden v. Fagan, 22 La. Ann. 546.”
In Railroad Co. v. Wooten, 36 La. Ann. 442, the title of the act which was attacked as being unconstitutional was: “An act to incorporate the Mississippi, Terre-aux Boeufs and Lake Borgne Railroad Company and to define its power and authority.”
It was claimed that the company was not authorized under this title to construct branch roads. This court said: “It is well settled by authorities, resting on sound reason and *601 principles, that the title of an act is not required to enumerate all the particulars, incidents, and details by which its object is to be carried out. The Constitution only requires that the title should announce the general object. The provisions in the body of the act, such as are ancillary to accomplish the purposes of the act and come within its purview, which are incidental or germane thereto, are considered as covered by the title, where its language is broad enough to include the same. In the present instance the corporation is given the right to build branch roads, and to expropriate for the purpose of constructing them. That right is a power, is one of its privileges, is part of its authority, and is clearly included or embraced within the title as expressed. Cooley C. L. 144-146; Bishop on Written Laws, § 36a; State v. Daniel, 28 La. Ann. 38; Police Jury of Parish of Plaquemines v. Packard, Id. 199; City of New Orleans v. Dunbar, Id. 722; Hammond v. Lesseps, 31 La. Ann. 337; State v. State Auditor, 32 La. Ann. 90; Succession of Irwin, 33 La. Ann. 63.”
At the time of the incorporation of St. Anna’s Asylum the Legislature was not prohibited from creating private corporations by special charters and giving them special privileges, nor was it prohibited from conferring upon them exemption from taxation. We think that the title of an act creating a charitable corporation, such as this corporation was, fairly gave notice to all parties that an exemption from taxation might be included in the body of an act as one among its privileges. Such an exemption at that time in charters was frequent. We think the objection made to the title of the act cannot be sustained. Such seems to have been the opinion of all parties when the first case concerning this institution was instituted and decided by the courts. The objection was existing and patent at that time, and could not have escaped the attention of the litigants.
In reference to the claim made by the state authorities that, under the Constitution in force at the date of plaintiff’s charter, the Legislature had no power to grant the exemption, and therefore the legislative charter was not binding on the state as a contract, counsel refer the court to New Orleans v. Commercial Bank, 10 La. Ann. 736, and to N. O. v. Poydras Asylum, 9 La. Ann. 584, and New Orleans v. Judah Congregation, 15 La. Ann. 389, which they declare affirmed the principles announced in the first-mentioned case. They say “the two latter eases involved the validity of exemptions under prior ‘general’ laws after the adoption of the Constitution of 1852. Of course, if the ‘general’ laws granting such exemptions, and having no ‘contract’ feature, were inconsistent with the Constitution of 1852, they would have been repealed thereby, but the court held that the exemptions continued in force until repealed by the legislature by section 40 of Act No. 164 of 1856.”
In the case referred to of New Orleans v. Commercial Bank, 10 La. Ann. 736, in which the city of New Orleans sought to enforce a city tax on real estate belonging to the defendant for the year 1852, and in which the defense was that the property of the defendant was exempt from any taxation by the city under an act of the Legislature approved 17th March, 1852, the court, referring to the article of the Constitution which declared that: “Taxation shall be equal and uniform throughout the state. All property on which taxes may be levied shall be taxed in proportion to its value to be ascertained as directed by law. No one species of property shall be taxed higher than another species of equal value on which taxes shall be levied. The Legislature shall have power to levy an income tax and to tax all persons pursuing any occupation, trade or profession” — used the following language: “It is (plaintiff’s contention) in effect that the act of the Legislature exempting defendant’s property from taxation is contrary to that provision of the Constitution which declares that all taxation shall be equal and uniform. It is manifest that the constitutional provision cannot be invoked by plaintiff in the present ease. The article (123) which contains it has also explained the meaning of the provision in a mode which leaves no room for doubt: All property (says the article) on which taxes may be levied in this state shall be taxed in proportion to its value, to be ascertained as directed by law. No one species of property shall be taxed higher than another species of property on which taxes shall be levied.
“It is clear that this article has reserved the right of the legislature to exempt any property it deems fit. But if it tax at all, *603 then, says the Constitution, it must tax equally or in a uniform rule, according to an assessment legally made, all property of the same description on which a tax is laid.”
We see no reason to change this construction of the article of that Constitution, and, accepting it as correct, defendants’ contention on this branch of the case is untenable. We do not understand the state authorities to claim that, if a valid charter contract was in fact created between the state and the plaintiff corporation by the legislative act incorporating the latter, anything has occurred since the incorporation which puts an end to the contract, but that they maintain that by reason of antecedent provisions of the Constitution of 1845, and of laws antecedent to the act of incorporation, there was no contract created.
We do not think their contentions on this subject well grounded.
For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment of the district court be, and the same is, hereby, affirmed.
The opinion and decree herein are intended to apply solely to the exemption claimed on the particular property on which the assessment attacked was laid, and as to conditions now existing.