## No. 3038

## Second Circuit

---

# VIDALIA BANK & TRUST COMPANY v. L. K. & E. M. PURCELL, CLARK, Third Opponent.

---

(February 3, 1928. Opinion and Decree.)

---

*(Syllabus by the Editor)*

1. **Louisiana Digest—Mortgages—Par. 36, 37; Laws—Par. 26, 28.**

Act No. 169 of 1914, which provides that no mortgage on rural real estate shall cover or affect the live stock thereon unless such stock is especially mortgaged in the act, is constitutional because it embraces one object, namely, to regulate the mortgage of live stock upon rural real estate.

2. **Louisiana Digest—Mortgages—Par. 36, 37; Laws—Par. 26, 28.**

Act No. 169 of 1914, which provides that no mortgage on rural real estate shall cover or affect the live stock thereon unless such stock is especially mortgaged in the act, is constitutional because the objects are properly expressed in the title which sufficiently indicates the general purpose of the law without specifying each provision thereon and does not mislead or take one by surprise.

3. **Louisiana Digest—Privileges—Par. 3, 6; Execution—Par. 54, 55.**

Under Code of Practice Article 722, the mere act of seizure invests the plaintiff with a privilege on the property seized which entitles it to be paid by preference over other creditors.

Appeal from the Tenth Judicial District Court, Parish of Concordia. Hon. N. M. Calhoun, Judge.

Action by Vidalia Bank & Trust Company against L. K. and E. M. Purcell, R. T. Clark, third opponent.

There was judgment for plaintiff and third opponent appealed.

Judgment affirmed.

Dale, Dale & Dale, of Vidalia, attorneys for plaintiff, appellee.

Hugh Tullis, of Vidalia; Engle & Laub, attorneys for third opponent, appellant.

ODOM, J. In 1917 R. T. Clark sold the Whitehall plantation in Concordia Parish to Thomas L. Cagle. The purchase price was not all paid by Cagle, and to secure the balance due Clark retained and Cagle granted a vendor's lien and special mortgage on the plantation and immovables by destination for $65,000.00.

The mortgage was duly recorded in the mortgage records of Concordia Parish on October 20, 1917.

Subsequently Thomas L. Cagle sold said plantation to L. K. and E. M. Purcell, the same being sold subject to the vendor's lien and special mortgage of R. T Clark. Subsequent to their purchase the Messrs. Purcell took possession of the plantation, and for its cultivation, use and improve-

ment placed thereon thirty-seven head of livestock, consisting of mules and horses.

On December 15, 1923, the Vidalia Bank & Trust Company obtained judgment against the Messrs. Purcell for something like $29,000.00. It procured the issuance of a writ of fi. fa. thereunder and the sheriff seized and advertised for sale the livestock which the Purcells had placed upon the said plantation for its use, improvement and cultivation.

R. T. Clark, the original vendor, whose claim for the balance of the purchase price of the land had not been paid, intervened in the suit of the bank versus the Purcells and claimed the proceeds of the sale of the livestock, on the ground that said livestock, having been placed on the plantation for its service and improvement, were immovable by destination under Article 468 of the Civil Code and were subject to his vendor's lien and special mortgage and that his privilege therefore primed that of the seizing creditor.

The horses and mules were sold for $1490.00, which amount was held by order of Court subject to its further orders.

On final trial the Court rejected intervenor's demands and ordered the proceeds paid to the bank.

Clark, the intervenor, appealed.

## OPINION

The mules and horses seized by the bank under its judgment were admittedly placed on the plantation for its service and improvement, but subsequent to the date on which Clark, the intervenor, sold to Cagle, so that they were not, of course, described and included in Clark's mortgage.

Clark's contention is that under Civil Code, Article 468, the livestock, when placed upon the plantation for its service and improvement, became at once immovable by destination, a part of the realty, and as they were on the plantation when seized and were then owned by the owners of the land, they were subject to his mortgage, as much so as the land itself, under Article 468 of the Civil Code, which provides that things placed by the owner upon a tract of land for its service and improvement become immovable by destination.

This, we understand, would be conceded by counsel for plaintiff bank if it were not for Act No. 169 of 1914 which, in specific terms, provides—

"That no mortgage upon Rural Real Estate shall cover, or affect the livestock upon the said real estate, or that may thereafter be placed thereon, unless the said livestock be specially mortgaged in the act of mortgage, in which case the animals so hypothecated shall be described as near as may be, by kind, age, color, marks, brand and such other indicia by which livestock is identified."

Counsel for Clark, on the other hand, concede that if Act No. 169 of 1914 be valid legislation, he has no mortgage or lien on the livestock seized by the bank, as they were not on the land when his mortgage was granted and were not, of course, described in the act.

But counsel for intervenor contend that the act referred to is unconstitutional for two reasons:

1st. Because it embraces more than one object; and,

2nd. Because these objects are not expressed in the title, in contravention of Article 31 of the Constitution of 1913, which provides that:

"Every law enacted by the General Assembly shall embrace but one object, and that shall be expressed in its title."

The question presented, therefore, is whether Act No. 169 of 1914 is constitutional.

The title of the act in question reads as follows:

"To regulate the mortgaging of Live Stock upon Rural Real Estate."

The act contains three sections. Section 1 provides that—

"No mortgage upon Rural Real Estate shall cover, or affect the livestock upon the said real estate, or that may thereafter be placed thereon, unless the said livestock be specially mortgaged in the act of mortgage, in which case the animals so hypothecated shall be described, etc."

Section 2 provides that—

"* * * the exemptions in the case of livestock mortgaged upon Rural Real Estate shall be the same as set forth in Act No. 65 of 1912."

And Section 3 repeals all laws in conflict with the act.

It is clear enough, we think, that the act has but one purpose or object, that being, as expressed in the title, to "regulate the mortgaging of livestock upon rural real estate."

Section 1 prescribes what the act of mortgage, in order to affect livestock, shall contain—the livestock shall be "specifically mortgaged in the act," and the "animals so hypothecated shall be described as near as may be by kind, age, color," etc.—otherwise the act shall have no effect upon them.

That part of the act and that part alone, counsel contend, is covered by the title, and they contend that the act is open to the objection of duplicity because in section 2 it provides that the exemptions in the case of livestock mortgaged upon rural real estate shall be the same as set forth in Act No. 65 of 1912; that in said section 2 there is set forth another purpose or object which is not mentioned in or suggested by the title.

Counsel, we think, are in error.

In carrying out the purpose of the act to regulate the mortgaging of livestock on rural real estate, the act, in section 2, does no more than restrict the operation or effect of the mortgage to those animals which are not exempt from seizure. It is stated that the exemption shall be the same as those specified in Act No. 65 of 1912, the chattel mortgage law then in force. The exemptions mentioned in the latter act are the same as those in Article 244 of the Constitution. The act does not create exemptions but merely recognizes those specified in the Constitution.

The word "regulate" used in the title of the act, means to adjust or control by rule: "to direct by rule or restriction" —(Webster).

One of the synonyms of the word "regulate" is "govern." To "regulate" means to "govern by or subject to certain rules or restrictions"; to control, restrict or direct; "to restrict within certain rules and limitations." 34 Cyc. 1029.

Section 2 of the act does nothing more than restrict or limit the effect or application of the mortgage to certain animals. To make such restriction is as much a "regulation" of the "mortgaging of livestock on rural real estate" as to prescribe that the animals mortgaged should be specifically described in the act.

The act directs the manner or method by which a valid mortgage may be obtained on livestock on rural real estate, and the restriction in section 2 is germane to that point.

Suppose the legislator, instead of adding section 2 had written in section 1 the proviso that the mortgage should not apply to those animals exempted from seizure under Article 244 of the Constitution. Would it then be argued that the act is amenable to objection of duplicity?

The object of a law is the aim or purpose of the enactment. The title of a legislative act need not be a synopsis of its contents. It is sufficient if it indicates the general purpose of the law without specifying each provision thereof. American Printing House for the Blind vs. Dupuy, 37 La. Ann. 188; St. Anna's Asylum vs. Parker, 109 La. 601, 33 So. 613; Compagnie Francaise, etc., vs. State Board of Health, 51 La. Ann. 657, 25 So. 591.

Where the title of an act does not mislead or is not such as to take one by surprise, it may be good notwithstanding it is not as ample as it might be. Thornhill vs. Wear, 131 La. 479, 59 So. 909.

The purpose of the constitutional provision that a law shall have but one object and that expressed in the title, is not to embarrass legislation but only to prevent the joining in one act purely unrelated matters. If all the parts of the act are reasonably related to one general object, the act is not amenable to the objection of plurality.

"An act whose title states one object and a number of other things germane to this object and connected therewith is not a violation of this provision."
State vs. Foto, 134 La. 154, 63 So. 859.
Thomas vs. School Directors, 136 La. 499, 67 So. 345.
Lacoste vs. Department of Conservation, 151 La. 917, 92 So. 381.
State vs. Mauvezin, 136 La. 746, 67 So. 816.

There is nothing in Act No. 169 of 1914 which is not germane to the object and purpose thereof, which, as stated in the title, is to "regulate the mortgaging of livestock on rural real estate."

The act is constitutional.

But suppose it to be conceded that the title of the act is not broad enough to cover section 2 thereof, it does not necessarily follow that the entire act is unconstitutional for that reason. At most, under that view, only section 2 would be void. Section 1 of the act is admittedly covered by the title, so that if section 2 be held void, section 1 could stand, for section 1 is in no way dependent upon section 2. Section 2 of the act does no more than recognize those exemptions specifically provided for in the Constitution.

The general rule is that where an act is broader than its title, the parts of which are indicated in the title must stand and that only those parts not so indicated will fall, unless they are so interwoven with and dependent upon each other that they cannot be separated.

State vs. Goff, 106 La. 270, 30 So. 844.
State vs. Kohnke, 109 La. 838, 33 So. 793.
State vs. Ferguson, 104 La. 253, 28 So. 917.
Mouton vs. Judge, 49 La. Ann. 1535, 22 So. 761.
State vs. Crowley, 33 La. Ann. 782.
State vs. Exnicios, 33 La. Ann. 253.
Williams vs. Payson, 14 La. Ann. 7.

Section 1 of said act is not so interwoven with and dependent upon section 2 that the two cannot be separated. To the contrary, section 1 can stand alone and is within itself a complete legislative act, capable of being enforced.

Act No. 169 of 1914 being constitutional, it follows, necessarily, that intervenor has no mortgage on the livestock seized by plaintiff, for such livestock are not men-

tioned in his special mortgage, and the act specifically provides that—

"* * * no mortgage upon Rural Real Estate shall cover, or affect the livestock upon the said real estate, or that may thereafter be placed thereon, unless the said livestock be specially mortgaged in the act of mortgage."

Aside from the general law which makes the property of the debtor the common pledge of his creditors, intervenor had no claim at all upon the property seized by the plaintiff. Plaintiff's seizure of the property was valid. By the mere act of such seizure it was invested with a privilege on the property seized which entitled it to be paid by preference over other creditors. C. P. 722.

Having reached the conclusion that Act No. 169 of 1914 is valid, we must, of course, give it effect. Therefore a discussion of the other points raised by counsel in argument and in brief is unnecessary.

The judgment appealed from is therefore affirmed with costs.