BREAUX, C. J.
The defendant, owner of a large store on Canal street, in New Orleans, prosecuted for violating Act No. 48, p. 106, of 1904, by offering for sale 75 feathers of the aigrette, found guilty by the First city criminal court, and sentenced to pay a fine of $50 or imprisonment, appealed to the criminal district court.
After hearing before the criminal district court on -appeal, that court affirmed the judgment, except with a slight modification of the penalty.
On application to this court for certiorari and prohibition to be -addressed to the criminal district court, a writ nisi issued in accordance with relator’s petition.
The return made in answer to the writ showed that the game warden of the parish of Orleans, in November, 1905, charged defendant by affidavit before the judge of the First city criminal court with having violated the act, cited supra, in having “in his possession and by offering for sale colored plumes, part of the body of the aigrette.”
There was a trial on this affidavit before the court of the first instance, and on appeal before the criminal district court it resulted as before mentioned.
We take up the different points in the order that they are presented -to us for decision by defendant.
Object Not Expressed in Title.
. The first objection of defendant is that the-title of the act, cited supra, under which the-prosecution was instituted, fails to set forth the object of the statute. The argument in-support of the above proposition is that it is-an attempt to regulate a business which is-not within the police power, and that the-title of the act gives no intimation of the-purpose of the statute in that respect.
In order to determine whether or not the title sufficiently indicates the object, it serves-a purpose to dwell for a moment upon the object the Legislature had in view in adopting the statute. It was to -prevent the destruction of the heron. One of the species-of this bird is classed by active ornithologists as the Louisiana heron, and by that name it is known everywhere and admired; for its beauty.
The -aigrette is another of the different species of herons. Its attachment for particular places during seasons is well known. It is a migrant four or five months of the-year. It leaves the shores of the Gulf of Mexico early in the winter, and goes further south, where the temperature is milder,, and perhaps attracted by the promise of food of which it is very fond. It returns early in the spring, and remains until the-folio wing winter.
The aigrette is elegant. Many feel for it, and think it should be permitted to live the-allotted time; that it is cruel to shoot them down in great numbers, as is sometimes-done.
The cluster of plumes on its head and’ shoulders is also known by the name of “aigrette.” The bird is aigrette, and the cluster of plumes also is known by that name.
These plumes are worn by ladies as part of their head-dress. They sometimes decorate the helmet of the soldier. To procure-one of these clusters of feathers it is sometimes necessary to kill as many as 20 birds,. *293 and even over that nnmher. They breed on the Gulf coast, and were fast disappearing. It is not difficult to kill them in breeding time. It must have occurred to the Legislature that something should be done for their protection. The title, bearing in mind the object in view, clearly indicates the object. The aigrette cannot be procured without killing the bird. The title shows the object. The tile is as complete as it was in State v. Ackerman, 51 La. Ann. 1209, 26 South. 84, and in Morgan’s La. & Texas R. R. Co. v. Barton, 51 La. Ann. 1340, 26 South. 271, in which the court held that jurisprudence does not favor the annulling of acts on the ground that every detail of a law is not expressly indicated by the title. It is sufficient if it denotes the object, and if the title affords a complete clue to the law. Succession of Lanzetti, 9 La. Ann. 329.
Continuing with the subject of the insufficiency of the title, the learned counsel argue that the text goes further than the object indicated by the title; that the statute interferes uselessly with an important branch of the millinery business, without an intimation of that object in the title; that it is against public policy.
Taking up, in passing, the last portion of the propositions first for decision, we have to state that the inutility or impolicy of the statute presents no question upon which we feel authorized to act. The Legislature must have deemed that it would serve a useful object, and that there was good policy in preventing the destruction of non-game birds. They are deemed useful. They destroy insects and reptiles, and thereby assist in preparing the ground for human habitation. To stimulate a love for them must have been one of the purposes. It is often thought that their protection has a humanizing and elevating influence. The title was not only an intimation, but a notice, to those who deal in feathers, that the commerce that was death to non-game birds must cease.
The decisions cited by learned counsel for defendant have no pertinence, viz.: State v. Ferguson, 104 La. 249, 28 South. 917, 81 Am. St. Rep. 123; State v. Walker, 105 La. 492, 29 South. 973.
The acts attacked by defendants in said cases were an interference with trade and against the freedom of commerce, which the laws seek to guard against. In our case (different from the just cited case), in our opinion, it is not an interference with trade or against the freedom of commerce.
Here the object was to protect living things under the police power — a distinct object clearly within that power, which the' word “protection” in the title embraces.
The statute is not directed against any particular industry.
The sections of the act interpreted are subjoined in a note; also the title.[1]
Interstate Law Regarding Commerce.
The interstate commerce clause, as interpreted by defendant, affords him scant support in his defense.
That law has not been violated by adopting the statute in question. In the first place, the feathers were offered for sale at defendant’s store. They were not in original packages. The interstate law is a protection to merchandise falling within its text, while it is an unbroken package. Moreover, in the exercise of its police power, the state may make it an offense to have birds in possession for transportation beyond the state if needful for their protection. The statute creating this as an offense, it has been held, does not violate the interstate law. Geer v. Connecticut, 161 U. S. 519, 16 Sup. Ct. 600, 40 L. Ed. 793.
The difference between our case and the cited case is not very great.
If it were possible to evade the law by-taking the aigrettes to New York and reship *295 ping them back here, thé statute, intended for _ the protection of home birds, would be a dead letter.
Another well-considered decision is pertinent, viz.: People v. Hesterberg, 184 N. Y. 126, 76 N. E. 1032, 3 L. R. A. (N. S.) 165.
In that case the court said:
“The preservation of such game is the valid exercise of the police power of the state.”
Game Laws.
To the argument that the act deprives persons of their liberty or authorizes seizures without due process of law, and that in consequence it is violative of section 8 of article 1 of the Constitution of the United States, it is sufficient answer to state that the trend of the decisions do not sustain the contention of the defendant.
Game laws have been enacted in nearly all of the states, and have been sustained by the courts as measures to prevent the useless destruction of birds. They are not in restraint of liberty of trade. Securing evidence against those who violate the law is not seizure and confiscation of property. It does not interfere with private property. These birds belong to the public, and the public may, through the lawmaking power, protect them and prohibit their sale.
The present law is in accord with game laws adopted to prevent the useless destruction of birds. True, it is drastic, and goes further than most game laws. Yet it is not pointed out in what respect it violates the organic law.
The Fine was Imposed for Each Bird Killed.
In another respect defendant’s contention is that the act violates the Constitution of the United States by imposing excessive fines.
The case of Garvey v. Whitaker, 48 La. Ann. 527, 19 South. 457, 35 L. R. A. 561, in which the recorder erroneously assessed the penalty of $25 or imprisonment for each plant destroyed, aggregating $1,800 or six years’ imprisonment for one night’s vandalism, is cited as authority.
The case here is different
The penalty of Act No. 48, p. 105, of 1904, specifies that a fine shall be imposed for each bird killed. In the cited case the sentence of the recorder divided a penalty which is not divisible and imposed separate fines.
It was alleged that the feathers in question were bought before Act No. 48, p. 105, of 1904, was adopted.
We are relieved from the necessity of passing upon this point, for learned counsel concede that, while the evidence clearly showed that the defendant had imported these feathers for hats from foreign countries long prior to the passage of the act of 1904, still that they will assume on this application that the court will not inquire into the guilt or innocence of the defendant, and that, therefore, they will confine their arguments to the constitutional objections raised to the pleadings.
It is therefore ordered, adjudged, and decreed that the rule nisi is recalled, and applicant’s demand is rejected, and his petition dismissed, at his costs.
NOTE.
Title: For the protection of birds other than game birds and their nests, eggs, and to provide a penalty.
See. 3. Be it further enacted, etc., that no person, within the state of Louisiana, shall kill, catch or have in his or their possession, living or dead, any resident or migratory wiid bird other than a game bird, or purchase, offer or expose for sale any such wild non-game bird after it has been killed or caught, except as permitted by this act.
Sec. 4. Be it further enacted, etc., that no part of the plumage, skin or body of any bird protected by this act shall be sold or had in possession for sale, and this irrespective of whether said bird was captured or killed within or without the State.
Act No. 48, p. 106, of 1904.

 See note at end of case.