(92 South. 381)

No. 25051.

LACOSTE et al. v. DEPARTMENT OF CON-SERVATION OF STATE OF LOUISIANA.

(April 22, 1922. Rehearing Denied by the Whole Court June 5, 1922.)

*(Syllabus by Editorial Staff.)*

1. Statutes ⟐110½(2) — Provision limiting permission to trap to bona fide residents held within title reciting that one purpose is to define trappers, etc.

Act No. 135 of 1920, § 5, providing that only bona fide residents of the state shall be permitted to trap fur-bearing animals or alligators, when read in connection with sections 1 and 4, defining trappers and requiring a license, is sufficiently covered by the title, which recites that one of its purposes is to define trappers, etc.

2. Statutes ⟐121(1)—Provision levying different license on resident and nonresident dealers held not required to be embraced in title.

The provision of Act No. 135 of 1920, § 4, levying a different license on resident and nonresident fur dealers and buyers, is a mere detail germane and incidental to the purpose of the act as expressed in its title, to levy licenses on all fur dealers and buyers, and not necessary to be embraced in the title under Const. 1913, art. 31.

3. Statutes ⟐109—Title stating object according to understanding of reasonable men sufficient.

The title of a law is not to be strictly or technically interpreted, and, if it states the object according to the understanding of reasonable men, it satisfies Const. 1913, art. 31.

4. Game ⟐3½—State has authority to preserve.

The common ownership of game and animals valuable for their skins and hides and the trust for the benefit of the people which the state exercises in relation thereto authorizes it in the exercise of the police power to preserve such game and animals.

5. Statutes ⟐107(1)—Act regulating trapping held to contain only one subject.

Act No. 135 of 1920 is a police regulation whose object is to protect and conserve fur-bearing animals and alligators for the common benefit, and the provisions levying a severance tax, fixing the time when, by whom, and under what conditions it shall be paid, prohibiting shipments or sales unless it is paid, requiring dealers to keep records and make reports, defining trappers, fur dealers, etc., and imposing annual license taxes, are all branches of the one object, germane and incidental thereto, and do not violate Const. 1913, art. 31.

6. Statutes ⟐107(1)—May deal with several branches of one subject.

Const. 1913, art. 31, providing that a statute shall embrace only one object, is not violated by a statute that deals with several branches of one subject or whose title states one object and a number of other things germane to such object and connected therewith.

7. Statutes ⟐110½(2)—Provisions imposing criminal liability for violations held within title.

Act No. 135 of 1920, § 10, declaring violations of that act relative to trapping of fur-bearing animals and alligators, etc., misdemeanors, is within the title, which recites that its purpose is in part to provide penalties for violations.

8. Licenses ⟐7(2) — Constitutional requirement as to uniformity does not apply to taxation on occupations.

Const. 1913, art. 225, requiring equal and uniform taxation, refers in terms to taxation on property and has no application to taxation on occupations.

9. Licenses ⟐7(1)—Tax held condition of divestiture of state's title, and not invalid because levied on dealer instead of trapper.

As Act No. 135 of 1920 is a police regulation, the so-called severance tax thereby levied on skins or hides taken from wild fur-bearing animals or alligators is not a tax for revenue, but a condition of the divestiture of the sovereign's title and its transfer to the person paying the tax or charge, and does not violate Const. 1913, art. 229, because levied on the dealer instead of the trapper or other persons severing the skins or hides.

10. Statutes ⟐110½(2)—Title held not to indicate that tax is to be levied on trapper rather than dealer in hides and skins.

The title of Act No. 135 of 1920, imposing a so-called severance tax on skins or hides taken from wild fur-bearing animals or alligators, does not indicate that the severance tax shall be levied on the trapper or party severing the skins or hides rather than the dealer upon whom it is imposed by the provisions in the body of the act.

**11. Licenses ⬅7(1)—Tax on dealers in furs and hides held not arbitrary or unwarranted.**

Act No. 135 of 1920, imposing a so-called severance tax on all skins or hides taken from wild fur-bearing animals or alligators to be paid by dealers therein, is not an arbitrary and unreasonable exercise by the state of its police power or an unwarranted and discriminatory interference with the lawful business of such dealers.

**12. Constitutional law ⬅253—Legitimate exercise of police power not restrained by Fourteenth Amendment or provisions protecting life, liberty, or property.**

The legitimate exercise of the police power is not subject to restraint by constitutional provisions for the general protection of the rights of individual life, liberty, and property, and is not interfered with by Const. U. S. Amend. 14.

**13. Constitutional law ⬅230(3) — Licenses ⬅7(6)—Equal protection not denied by discrimination between resident and nonresident dealers in hides and skins of wild animals.**

As wild game within the borders of the state belong to the people of the state and not to private individuals, the right of nonresident dealers to buy and ship skins and hides of wild fur-bearing animals is a mere privilege which the state may grant or withhold, and for the exercise of which it may exact a charge different from that imposed on residents without violating the provision of Const. U. S. Amend. 14, forbidding laws denying the equal protection of the law.

**14. Commerce ⬅77—Tax on hides and skins of wild animals to be paid before exportation held valid.**

In view of Lacey Act, § 242 (U. S. Comp. St. § 10412), making it unlawful to transport or deliver to a common carrier for transportation the dead bodies or parts of any wild animals or birds killed or shipped in violation of state laws, Act No. 135 of 1920, imposing a tax on hides and skins of wild fur-bearing animals or alligators to be paid before shipment from the state, does not violate the commerce clause of the federal Constitution or the Interstate Commerce Law (U. S. Comp. St. § 8563 et seq.) as levying tax on exports.

**15. Constitutional law ⬅62—Legislative power or arbitrary power to oppress legitimate business held not delegated to Department of Conservation.**

Act No. 135 of 1920, § 3, imposing a so-called severance tax of two cents on the dollar on skins or hides of wild animals or alligators, and authorizing the Department of Conservation to ascertain the actual price paid and determine the time when and the manner in which the tax shall be paid and adopt rules and regulations not contrary thereto to carry the act into effect in relation to the collection of the tax, and section 6, requiring records to be kept by buyers and dealers and to be open to inspection by the Department, delegates only executive and not legislative power and gives the Department no arbitrary power to oppress legitimate business.

Provosty, C. J., dissenting.

Appeal from Civil District Court, Parish of Orleans; Wynne G. Rogers, Judge.

Suit by Paul V. Lacoste and others against the Department of Conservation of the State of Louisiana. From a judgment dismissing the suit, plaintiffs appeal. Affirmed.

Merrick & Schwarz and Morris B. Redmann, all of New Orleans, for appellants.

A. V. Coco, Atty. Gen., and Paul A. Sompayrac, Asst. Atty. Gen., for appellee.

By the WHOLE COURT.

LAND, J. Petitioners, resident and nonresident, are engaged in this state, and especially in the city of New Orleans, in the business of buying and selling, importing, exporting, and dealing in hides, skins, and furs, some of which were originally taken from wild fur-bearing animals and alligators in this state.

They complain that the Department of Conservation of the State of Louisiana is illegally seeking to collect from them, under the provisions of Act 135 of the General Assembly of 1920, a "severance tax" of two cents on the dollar on the value of skins and hides purchased by them and taken from wild fur-bearing animals and alligators within the state, for the reason that said act is unconstitutional.

Petitioners therefore declined to pay said "severance tax," and, alleging the unconstitutionality of said act, obtained an injunction from the civil district court of the par-

ish of Orleans, restraining the Department of Conservation from threatened seizure and confiscation of all shipments of hides and furs made or to be made by any of petitioners.

This injunction was dissolved and plaintiffs' suit dismissed on exception of no cause nor right of action, which was maintained by the lower court.

Plaintiffs have appealed from the judgment against them, and attack the constitutionality of Act 135 of the General Assembly of 1920 on the following grounds:

[1] "(1) That said act of the Legislature is violative of article 31 of the state Constitution of 1913, in that the title of said act does not embrace nor express the object in regard to limiting the privileges of trapping furbearing animals or alligators in this state to such persons only as shall have been bona fide residents of this state for at least the preceding six months, as set out in section 5 of the act."

In the title of the act we find, "to allow licensed trappers to hunt wild game without additional license"; "to define trappers, fur dealers, fur buyers, resident and nonresident"; "defining the time and making an open season for the trapping of all fur-bearing animals and the taking and killing of alligators in this state."

Section 1 of said act defines a "trapper" as follows:

"A trapper shall be considered to be a person who takes the animal in its wild state and removes the skin therefrom for sale."

Section 5 of said act provides:

"That only such persons that shall have been bona fide residents of this state for at least the preceding six months shall be permitted to trap fur-bearing animals or alligators in this state, or shall be permitted to receive license therefor."

Section 4 of said act also provides:

"That there be and are hereby levied the following licenses on each trapper, * * * to wit: Any trapper herein defined possessing a state wide hunting license, costing one (1.00) dollar, shall be permitted to trap under this law."

In other words, a trapper in this state is "defined" to be, not merely the person who takes the animal in its wild state and removes the skin therefrom for sale, but he must also be a resident for at least the preceding six months before he is licensed, and must possess a hunting license. The provisions of these sections are clearly within the title of the act, as the legal qualifications for a trapper are necessarily included in and form a part of the definition.

[2] Petitioners also complain that the title of said act fails to show that a distinction is made between resident and nonresident dealers, in regard to the amount of license tax to be paid.

We find in the title of the act these words, "levying an annual license tax on persons, firms, corporations or associations of persons engaged in the buying of hides and skins taken from wild fur-bearing animals and alligators, and prohibiting the conduct of such business without such license." We find also in the title of said act the following words: "To define trappers, fur dealers, fur buyers, resident and nonresident." These provisions in the title clearly indicate, and give notice to persons reading the title of said act, that "nonresident" fur buyers and fur dealers are embraced within its scope, and that all such dealers are subject to the payment of such licenses. The levying of a different license on nonresident fur dealers and fur buyers in section 4 of said act is a mere classification, a mere detail which it was not necessary to embrace in the title of the act, as such detail is germane and incidental to the avowed purpose of said act, as expressed in its title, to levy licenses upon all fur dealers and fur buyers, resident or nonresident. In respect to the levying of licenses, we find nothing in

the title of said act that is misleading, surprising, or confusing to persons reading it.

[3] The title of a law is not to be strictly or technically interpreted; if it states the object, according to the understanding of reasonable men, it satisfies the Constitution. State v. Boylston, 138 La. 28, 69 South. 860; Municipality No. 3 v. Michoud, 6 La. Ann. 605.

"(2) The said act of the Legislature embraces more than one object."

Plaintiffs' counsel indicated in their brief the following as the different objects set forth in the body of the act:

"One of the objects of the act, as shown by sections 8 and 9 thereof, is the conservation of wild fur-bearing animals and alligators by providing for open and closed season for hunting and trapping them.

"Another object of the act is to regulate the business of fur dealers, the shipment of furs out of the state, and to impose upon the dealers a fixed license tax in addition to the regular annual license tax.

"A third separate and distinct object of the act is provided for in section 3 thereof, which provides for an ad valorem tax of two cents on the dollar on the value of all skins or hides taken from any wild fur-bearing animals or alligators within this state, which severance tax shall be paid by the dealer, etc."

Plaintiffs' counsel state in their brief that—

"Not only are these objects set forth in the body of the act, but they are also expressed in the title."

It is evident from these and other subdivisions in the title of Act 135 of the General Assembly of 1920 that its object is to conserve for the common benefit of the people of the state the property rights in all fur-bearing animals and alligators in this state, including the valuable asset of the skins and hides of these animals, which naturally constitute a part of the common wealth of the state.

[4] The right to preserve game and animals valuable for their skins and hides flows from an undoubted existence in the state of a police power to that end. This authority of a state is derived from the common ownership of the game and of such animals and the trust for the benefit of its people which a state exercises in relation thereto. Under said act, the wild life of the state is made the property of the state; it is a part of the state's natural resources, which the state may, in the exercise of its police powers, enact regulations to preserve and conserve. Geer v. Connecticut, 161 U. S. 519, 16 Sup. Ct. 600, 40 L. Ed. 793; Patsone v. Pennsylvania, 232 U. S. 138, 34 Sup. Ct. 281, 58 L. Ed. 539; McCready v. Virginia, 94 U. S. 391, 24 L. Ed. 248.

[5] Act 135 of the General Assembly of 1920 is therefore a police regulation, whose object is to protect and conserve the animals designated therein for the common benefit, and the various subdivisions of the title of said act, pertaining to the "levying of a severance tax"; "fixing the time when, by whom, and under what conditions such severance tax shall be paid"; "prohibiting persons, and firms, and corporations from shipping or selling hides or skins unless said severance tax is paid"; "requiring persons dealing in hides or skins to keep records of all receipts and sales of said hides and skins and to make reports of same to the Department of Conservation"; "defining trappers, fur dealers, fur buyers, resident and nonresident"; "imposing annual license taxes, etc."—all are branches of the object of the act, germane and incidental thereto, and the means of accomplishing the purpose of said act, and do not in themselves constitute different objects foreign to that embraced in the title of said act. These various subdivisions of the title relate to the conservation and protection of the animals designated in the act, and provide through the imposition of a "severance tax" the means of enforcement of the act, or police regulation enacted for that purpose. They also relate to the

collection and protection of the fund derived from the "severance tax," without which the enforcement of said act or police regulation would not be possible.

[6] The constitutional requirement that a statute shall embrace only one object does not mean that each and every means necessary to accomplish an object in the law must be provided for by a separate act relating to it alone. A statute that deals with several branches of one subject does not thereby violate the constitutional requirement that the act must have only one object. State v. Doremus, 137 La. 266, 68 South. 605; City of Shreveport v. Nejin, 140 La. 786, 73 South. 996.

An act whose title states one object and a number of other things germane to this object and connected therewith is not a violation of article 31 of the Constitution, requiring that the title of the act state only one object. Thomas v. Board of School Directors, 136 La. 499, 67 South. 345; State v. J. Foto & Bro., 134 La. 154, 63 South. 859; State v. Mauvezin, 136 La. 749, 67 South. 816.

[7] Counsel for plaintiffs also contend in their brief that there is nothing in the title of the act to indicate any criminal liability for the violation of any of its provisions, and that therefore section 10 of said act, declaring that the violation of any provision of said act shall constitute a misdemeanor, punishable by fine or imprisonment, etc., is a provision in the body of the act, of which no indication is given in the title.

In this statement counsel for plaintiffs are in error, as the title of said act concludes with the words, "to provide penalties for the violation of this act and to repeal all conflicting laws."

"(3) The said act is violative of the Constitution of the State of Louisiana, in that the title of said act expresses the purpose of the act to be 'the levying of a severance tax,' whereas section 3 of said act, while using the words 'severance tax,' in fact does not levy the tax on the severing of or on the persons who sever the skins or hides, but purport to levy a 'severance tax' on the dealers in such hides and skins."

"(4) The said act is in violation of the state Constitution, in that the license tax therein provided for is not equal and uniform."

We will consider objections 3 and 4 together.

[8] Article 225 of the Constitution, requiring equal and uniform taxation, refers, in terms, to taxation on property and has no application to the taxation on occupations. State v. Underwood, 139 La. 298, 71 South. 513.

[9] As we have held in this opinion that Act 135 of the General Assembly of 1920 is a police regulation, it necessarily follows that the severance tax imposed in said act is not a tax levied under the Constitution for revenue, but a charge imposed under the police power of the state for carrying out a police regulation. Board v. Richhart et al., 139 La. 446, 71 South. 735; De Gruy v. La. State Board of Pharmacy, 141 La. 896, 75 South. 835. Such severance tax or charge is therefore not subject to the provisions of article 229 of the Constitution of 1913.

It is to be observed enpassant that said article provides that the amount of severance tax to be collected of those engaged in the business of severing natural resources, such as timber and minerals, from the soil or water, may be either graduated or fixed according to the quantity or value of the product at the place where it is severed.

[10] The title of Act 135 of the year 1920 declares the wild fur-bearing animals and alligators of this state to be the property of the state, and the skins taken from such animals to be the property of the state, until there shall have been paid to the state of Louisiana the severance tax levied thereon by the provisions of this act. The title of this act does not indicate that this severance

tax shall be levied on the party severing, or on the persons who sever, the skins or hides. It merely declares that the act shall fix "the time when, by whom, and under what conditions such severance tax shall be paid."

As the title and the provisions of the act plainly declare that these animals and their skins are the property of the state and shall so remain, until the severance tax is paid, it is clear that the tax or charge is levied, and its payment is made a condition precedent to the divestiture of the sovereign's title and its transfer to the person, firm, or corporation paying the tax or charge.

These provisions clearly indicate that the charge of 2 per cent. imposed in said act was not levied as a severance tax under article 229 of the Constitution of the state, but solely as a charge or duty under the authority of the police power of the state, to put into operation and to enforce its police regulation.

It follows, therefore, that it was not necessary that the assessment of this charge should conform to the provisions of the Constitution of 1913, nor that it should be imposed upon the class of persons or at the time therein designated. These were matters which the state, in the exertion of its police power, had the right primarily to determine, in parting with the ownership of its property in these animals and their skins and hides. In imposing this charge, the state was compelled to act upon sound business principles, and to levy the same upon the dealers in furs and skins, as such dealers are known, have established places of business, make inventories of their stocks, and are easily accessible for the purpose of collection of said charge. To levy such a charge upon an itinerant trapper at the time of severing the skin or hide, with no fixed place of abode or business, and with no inventory of stock, would deprive the state and its Department of Conservation of any efficient means of ascertaining the number or value of the skins or hides, and of collecting the charge. The result would be the crippling of the activities of the Department of Conservation of the state through lack of funds, and the indiscriminate slaughter of its animals, to say nothing of the consequent loss of the value of their skins and hides. The very object of Act 135 of 1920, the conservation of the natural resources of the state, would be defeated to a great extent, and to the detriment of the citizens of the state at large, for whose common benefit those animals and their skins and hides are protected by the state under its police power.

[11] The imposition of such charge upon the dealer in fur and hides was not, therefore, an arbitrary and unreasonable exercise by the state of its police power, nor an unwarranted and discriminatory interference with the lawful business of such dealers, but it was demanded by the exigencies of the case, and by the necessity for protecting, in a practical and efficient manner, the revenue or fund upon which the enforcement of the police regulation of the state depends.

"(5) The said act is violative of the Constitution of the United States, and particularly of the Fourteenth Amendment thereof, in that it denies to persons within the state's jurisdiction the equal protection of the laws; the object of the act being to relieve the trapper of any tax and to place the burden on the dealer, contrary to the policy of the state taxation in every other instance of 'severance tax.'"

As the imposition of this charge is made under the police power of the state as a means of enforcement of its police regulation in reference to the conservation of its wild animal life, and not under the taxing power of the state, as ordained in the state Constitution, this objection must be considered from the aspect of the rights of the state in the exertion of its police power for the preservation of its natural resources.

[12] The legitimate exercise of the police power is not subject to restraint by constitutional provisions for the general protection of the rights of individual life, liberty, and property. State v. Schlemmer, 42 La. Ann. 1166, 8 South. 307, 10 L. R. A. 135. And the Fourteenth Amendment of the Constitution of the United States does not interfere with the proper exercise of that power. 6 R. C. L. pars. 193, 194; L'Hote v. New Orleans, 177 U. S. 596, 20 Sup. Ct. 788, 44 L. Ed. 903; State v. McCormick, 142 La. 582, 77 South. 288, L. R. A. 1918C, 262.

[13] Though the Fourteenth Amendment to the United States Constitution forbids any state from making or enforcing any law which shall deny to any person within its jurisdiction the equal protection of the law, all discrimination as to persons who shall kill game within its borders is not thereby forbidden. Owing to the fact that the wild game within the borders of the state belong to the people of the state, and not to private individuals, it is lawful for the state, as the sovereign holding in trust such common property for the common benefit, to make regulations which shall exclude nonresidents from an equal enjoyment of such game. Thus a state may require the procurement of licenses by all hunters and deny the privilege of obtaining such licenses to persons residing outside the state. And if the state sees fit to permit a nonresident to take game, it may impose a larger license fee; for the state, having the right absolutely to exclude nonresidents from hunting within its borders, may admit them upon such conditions as it sees fit to impose. 12 R. C. L. p. 693 (10); Geer v. Connecticut, 161 U. S. 519, 16 Sup. Ct. 600, 40 L. Ed. 793; State v. Schwartz, 119 La. 294, 44 South. 20.

Under Act 135 of 1920 the skins and hides of wild fur-bearing animals and of alligators as well as these animals themselves, are declared to be the property of the state, the common property of the people held in trust by the sovereign for their common benefit, and to be conserved and protected in the discharge of the duties of this trust under the ægis of the police power of the sovereign. The whole scheme for the accomplishment of this purpose is declared by this act to rest upon this and no other basis. It follows therefore that there can be no reasonable distinction drawn between the common ownership of the animals and the ownership of their skins and hides by the people of the state, for both are property of the same origin and legal status, i. e., common and not private property, to be conserved and to be disposed of under the police power of the state.

The nonresident appellants as dealers in skins and hides within the state are therefore engaged in a business which is peculiarly subject to control by the police power of the state, owing to the unusual species and status of the property in which they deal. The right of nonresidents to buy and ship the skins and hides of wild fur-bearing animals of the state is therefore not an absolute right, but a mere privilege which the state may grant or withhold and for the exercise of which it may exact a charge. The case at bar, therefore, differs essentially from arbitrary classification or discrimination made by the state Legislature against persons of the same class engaged in harmless and lawful occupations affecting the private property which may compose the internal commerce of a state. The line of demarcation being thus clearly fixed, the case at bar must be differentiated by this court from the cases of Noble v. Douglas (D. C.) 274 Fed. 672, and Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220, upon which plaintiffs' counsel confidently rely, as was properly done by Mr. Justice Field in the case of Crowley v. Christensen, reported in 137 U. S. 91, 11 Sup. Ct. 13, 34 L. Ed. 624 et seq.

[14] "(6) Act 135 of 1920, in levying a tax on exports from the state, is violative of the interstate commerce clause of the federal Constitution."

That such a statute does not violate the Interstate Commerce Law (U. S. Comp. St. § 8563 et seq.) is no longer an open question. If it were still a question in dispute, it would be definitively settled against such contention by the provisions of the Lacey Act, § 242 (35 Statutes at Large, p. 1137 [U. S. Comp. St. § 10412]). Geer v. Connecticut, 161 U. S. 519, 16 Sup. Ct. 600, 40 L. Ed. 793; State v. Schwartz, 119 La. 294, 44 South. 20; Territory of New Mexico ex rel. E. J. McLean & Co. v. Denver & Rio Grande Railroad Co., 203 U. S. 38, 27 Sup. Ct. 1, 51 L. Ed. 78; Neilson v. Garza, 2 Woods, 287, Fed. Cas. No. 10,091; Patapsco Guano Co. v. Board of Agriculture, 171 U. S. 345, 18 Sup. Ct. 862, 43 L. Ed. 191.

[15] "(7) Whether we consider Act 135 of 1920 as a police regulation or a revenue law enacted under either the police or taxing powers of the state, we respectfully submit that it vests a political board with arbitrary power to make regulations that may be very oppressive to legitimate business, and delegates to such board the taxing power of the Legislature."

An inspection of section 3 of Act 135 of 1920 discloses the fact that the so-called severance tax is fixed by said section at two cents on the dollar on the value of all skins or hides taken from any wild fur-bearing animal or alligators in this state. Said act does not, therefore, delegate to the Department of Conservation of the state the taxing power of the Legislature, which has itself fixed in said section with exactness the rate of said so-called tax. The quantum of said severance tax is not then left to the arbitrary discretion or determination of said Department, which is without authority under said section to either increase or diminish the rate established by the statute.

The authority with which said Department is clothed by the provisions of said section is:

"To ascertain the actual purchase price of skins and hides paid by the dealer subject to pay the tax and to determine the time when, and the manner in which, said severance tax shall be paid, and to adopt * * * rules and regulations, *not contrary to the provisions of this act,* to carry the provisions of this act into effect *in relation to the collection* of said severance tax and the licenses herein imposed." (Italics ours.)

Then follows in the next line the provision:

"It shall be a violation of this act for any person, firm, corporation, or association, to ship or carry from this state any skin or hide of any fur-bearing animal or alligators on which the severance tax is due, without the said severance tax on said skin or hide first being paid to the state of Louisiana."

Section 6 of said act requires all buyers and dealers in hides and skins to keep a complete record and to make monthly reports of all purchases and sales, and provides that the records, books, and memoranda of said buyers and dealers shall be open to the inspection of the agents of the Department of Conservation. In other words, the duties imposed upon said Department are not legislative, but are of an executive character. They relate to the collection of the severance tax, the ascertainment of the amount due, and to the adoption, incidentally, and enforcement of rules and regulations, "not contrary to the provisions of this act, to carry the provisions of this act into effect in relation to the collection of said * * * tax."

We fail to find in the delegation by the Legislature to said Department of such necessary and reasonable authority, any arbitrary power conferred to oppress legitimate business.

However, we are dealing in the case at bar, not with the delegation of the power of taxation by the Legislature, but with the delegation of police power by the state to its Department of Conservation, a political agency especially created by the sovereign, and given exclusive authority to collect and

conserve the fund to be derived for the purpose of putting into efficient operation the Conservation Act of the State (Act No. 204 of 1912)' for the preservation of its natural resources.

In "The Fourteenth Amendment" by Brannon it is said:

"The great police power resides in the state; but it is impossible that the state should itself be present in every instance to enforce police regulations, or that it should provide for the multitudinous instances of its exercise by legislative acts. The whole time of the Legislature would be thus consumed; its acts would be endless; the thing would be utterly impracticable. Hence the necessity of the delegation of some of this power to cities, and other municipal corporations, and to counties, districts or townships." Page 211.

The necessity of the delegation of a part of the police power of the state to its Department of Conservation is likewise evident, in the enforcement of police regulations affecting the conservation of its natural resources.

For the reasons assigned, the judgment appealed from is affirmed at the cost of the appellants.

PROVOSTY, C. J., dissents.
O'NIELL, J., concurs in the results.

Rehearing refused by the WHOLE COURT.