LAND, Justice.
 

 Act No. 15 of the Third Extra Session of 1934, approved December 21, 1934, is an act imposing occupation-license taxes upon those engaged in various businesses, trades, and professions.
 

 Section 41 of this act levies a tax of 5 cents per barrel of 42 gallons upon every person, firm, corporation, etc., “engaging, being occupied or continuing in the business of refining, heating, cracking, or distilling petroleum, crude oil or products thereof, and manufacturing, refining or distilling products out of said petroleum, crude oil or products thereof.”
 

 The tax is due and payable quarterly, the first payment being due March 31, .1935. Paragraphs (f) and (g), § 41, Act No. 15 of the Third Extra Session of 1934.
 

 At ■ its Extra . Session of 1935, by House Concurrent Resolution No. 1, designated as
 
 *303
 
 Act No. 25 of the First Extra Session of 1935, the Legislature authorized the Governor to suspend the provisions of section 41 in so far as the same levies or imposes a tax in excess of 1 cent per barrel.
 

 By section 2 of Act. No. 5 of the First Extra Session of 1935, the Legislature also authorized the Governor, by adding a new section, 41%, to Act No. 15 of the Third Extra Session of 1934, to suspend section 41 by placing the tax at 1 cent per barrel of 42 gallons, “under the authority vested in him by Concurrent Resolution No. ,1.”
 

 On March 2, 1935, the Governor issued his proclamation suspending the law, as authorized, for a period of 8 months from January 9, 1935, the effective date of Act No.' 15 of the Third Extra Session of 1934, and ending September 9, 1935.
 

 Asserting that the proclamation, and House Concurrent Resolution No. 1 (Act No. 25 of the First Extra Session of 1935) and section 2 of Act No. 5 of the First Extra Session of 1935, adding section 41%, were unconstitutional, and that the state of Louisiana has a pecuniary interest in the whole of the tax levied by Act No. 15 of the Third Extra Session of 1934, the state of Louisiana, on the relation of the Attorney General, filed this suit for a mandatory injunction to compel the supervisor of public accounts, the officer charged with the collection of the tax, to collect the full amount levied by Act No. 15, 5 cents per barrel, and to restrain that official from collecting less than the full amount of the tax. A rule nisi issued to show cause why a preliminary injunction should not issue.
 

 On the date set for the trial of the rule, the supervisor of public accounts answered, alleging the validity of the proclamation made by the Governor, and the constitutionality of House Concurrent Resolution No. 1 and of section 2 of Act No. 5 of the First Extra Session of 1935, adding section 41%, and averring her intention to collect a 1 cent refining occupational tax in this case.
 

 The Standard Oil Company of Louisiana intervened, and also alleged the validity of the proclamation made by the Governor, and the constitutionality of the Resolution, and of section 2 of Act No. 5 of the First Extra Session of 1935, adding section 41%.
 

 Answers were filed by the state and by the supervisor of public accounts to the intervention of the Standard Oil Company. The whole matter was then put at issue by the various pleadings and was tried on the rule and on the merits.
 

 The trial judge rendered a judgment, maintaining the validity of the proclamation made by the Governor, and the constitutionality of'House Concurrent Resolution No. 1, and of section 2 of Act No. 5 of the First Extra Session of 1935, adding section 41% to Act No. 15 of the Third Extra Session of 1934, etc., and recalling the rule nisi, and dismissing the suit of the state, and from this judgment the state has appealed.
 

 (1) The Governor is authorized to make the suspension in this case by proclamation “pursuant to the authority vested in the Legislature by Section 5 of Article XIX of the Constitution,” which provides that: “No power of suspending laws of this
 
 *305
 
 State shall be exercised unless by the Legislature, or by its authority.”
 

 The Attorney General has attacked the constitutionality of House Resolution No. 1 and of section 2 of Act No. 5 of the First Extra Session of 1935, adding the new section 4.1% to Act No. 15 of the Third Extra Session of 1934, on the ground that both authorize the Governor, “in his discretion,” to make the suspension, and that the Legislature has no power to vest the authority to suspend a law in any person to be exercised at his discretion.
 

 The two controlling paragraphs of House Concurrent Resolution No. 1 (Act No. 25 of the First Extra Session of 1935) are as follows:
 

 “Whereas, for the purpose of securing better employment and promoting more business in the United States of America it is advisable that the Chief Executive of the State be vested with the power to suspend the provisions of the law insofar as the same provides for the collection of said occupation-license tax
 
 in excess of Lf per barrel, and *
 
 # *
 

 “Be it further resolved by the Legislature of Louisiana, the House of Representatives and the Senate concurring, that the Governor of the State be and he is hereby empowered and
 
 authorized to suspend the provisions
 
 of sub-division (b) of Section 41 of Act No. 15 of the Third Extraordinary Session of the Legislature of Louisiana, insofar as the same levies or imposes an occupation-license or • privilege tax for the manufacturing, refining, heating, cracking or distilling petroleum, crude oil or products thereof
 
 in excess of one cent (1‡) per barrel of forty-two (42) gallons;
 
 that the said Governor shall by proper proclamation or proclamations make such suspension on such dates or occasions and for such period or periods of time or duration as may be prescribed by him in the proclamation making such suspension, such suspensions not to be effective beyond noon of the twentieth day after the adjournment of the Regular Session of the Legislature of Louisiana for the year 1936, and. * * * ” (Italics ours.)
 

 It is true that the Governor is authorized, “in his discretion,” to make the suspensions, but it will appear hereafter in this opinion that the advisability and the necessity for same are controlled by “conditions, circumstances and emergencies” stated in Resolution No. 1.
 

 The Legislature itself,
 
 in Concurrent Resolution No. 1,
 
 has fixed the reduction of the tax to 1 cent,
 
 and the Governor has no discretion whatever to fix the tax at 2 cents or 3 cents or 4 cents, or at anything that he may wish between 1 cent and 5 cents. The only discretion conferred upon the Governor is that he may “make such suspension on such dates or occasions and for such period or periods of time or duration as may be prescribed by him in the proclamation making such suspension,” which are limited in duration to “noon of the twentieth day after the adjournment of the Regular Session of the Legislature of Louisiana for the year 1936.”
 

 The legislative reason and intent in passing Resolution No. 1, designated as Act No. 25 of the First Extra Session of 1935, is specifically declared, in the preamble of the resolution, to be “for the purpose of securing better employment and promoting more busi
 
 *307
 
 ness in the United States,” and that “it is advisable that the Chief Executive * * * 6e
 
 vested with the power to suspend
 
 the provisions of the law
 
 in so far as the same provides for the collection of said occupation-license tax in excess of 14 per barrel”;
 
 that “the advisability of and the necessity
 
 for the same
 
 is controlled
 
 by conditions, circumstances and emergencies
 
 which arise and subside from time to time and which are varied and modified in such manner and to such extent as renders it a matter of practical impossibility for reasonable or satisfactory
 
 regulation or suspension
 
 to be made by positive provision of the law”; and that the Legislature “does by this Act repose confidence and authority in the Governor of the State
 
 as a practical means of effectuating such desired objects.”
 
 (Italics ours.)
 

 Necessarily, in making such suspensions, the Governor must consider the “conditions, circumstances and emergencies” enumerated in the act,
 
 and the fact-finding
 
 involved under this general authority covers a large field. The suspensions which the Governor may make are not left, therefore, to his arbitrary discretion.
 

 (2) Under section 41%, the new section added to Act No. 15 of the Third Extra Session of 1934, the General Occupation-License Tax Law, the Governor may make suspensions, “under the authority vested in him by Concurrent Resolution No. 1 of the First Extra Session of the Louisiana Legislature for the year 1935.”
 

 It is provided in section 41% that
 
 ‘‘no tax in excess of 14 per barrel
 
 shall ever accrue or be collected for the period of suspension named in the said proclamation
 
 and no tax liability in excess of 14 per barrel of 1$ gallons
 
 shall be incurred by any person, firm or corporation, subject to the provisions of said Section 41 during the period of suspension.” (Italics ours.)
 

 It is clear, therefore, that, in section 41%,
 
 the Legislature itself has also limited the tax to 1 cent per barrel,
 
 during the period of suspension.
 

 The ease of Lacoste v. Department of Conservation, 151 La. 909, 92 So. 381, later affirmed by the Supreme Court of the United States, 263 U. S. 545, 44 S. Ct. 186, 68 L. Ed. 437, is a case directly in point.
 

 In the Lacoste Case it is said by the court: “An inspection of section 3 of Act No. 135 of 1920 discloses the fact that
 
 the so-called severance tax is fixed by said section at tico cents on the dollar
 
 on the value of all skins or hides taken from any wild fur-bearing animal or alligators in this state.
 
 Said act
 
 does not, therefore, delegate to the Department of Conservation of the state
 
 the taxing power of the Legislature, which has itself fixed in said section with exactness the rate of said so-called tax. The quantum
 
 of said severance tax is not then
 
 left to the arbitrary discretion or determination
 
 of said Department, which is without authority under said section
 
 to either increase or diminish the rate established by the statute.”
 
 151 La. 909, page 923, paragraph 3, 92 So. 381, 388. (Italics ours.)
 

 There is no uncertainty here as to the legislative intent and policy; no discretion is attempted to be given to the Governor to determine what the policy shall be; the law imposes upon him no duties, and confers upon him no powers except to execute the law. When the Governor proclaims a change of
 
 *309
 
 tax, the new rate does not come into being
 
 as a result of the proclamation,
 
 but the proclamation and the rate of the tax
 
 result from the law.
 

 It is also well to remember that in determining what the Legislature may do in
 
 seeking
 
 assistance from another branch of the government, “the extent and character Of that assistance must be fixed
 
 according to common sense and the inherent necessities of the governmental coordination."
 
 (Italics ours.) See J. W. Hampton, Jr., & Co. v. United States, 276 U. S. 394, 48 S. Ct. 348, 351, 72 L. Ed. 624.
 

 (3) The Lacoste Case is also direct authority against the contention of the Attorney General that the proclamation made by the Governor, and House Resolution No. 1, and section 2 of Act No. 5 of the First Extra Session of 1935, adding the new section 41%, are unconstitutional and invalid, since there can be no delegation to a state department, or a state board or agency of
 
 the taxing poioer
 
 of the state, when the rate of tax has been fixed by the Legislature itself, and the powers delegated are purely executive, as in the case at bar.
 

 It is apparent, therefore, that neither the proclamation nor the resolution, nor the additional section 41% violates section 1, article 10 of the Constitution, as amended by Act No. SI of 1934, and which declares that: “The power of taxation
 
 shall he vested
 
 in the Legislature; shall never be surrendered, suspended or contracted away.” (Italics ours.)
 

 Nor has “the power of taxation” vested in the Legislature been
 
 suspended
 
 in this case since, at the expiration of the present proclamation by the Governor, the tax will again come back to 5 cents per barrel, and it will remain there, unless, under the conditions as established by the Legislature, it becomes again the duty of the Governor to reissue a second proclamation, leaving the tax at 1 cent per barrel. This is proof also that the “power of taxation” has not been
 
 surrendered.
 
 Had it been
 
 surrendered,
 
 the rate of taxation could never come back to 5 cents.
 

 By the same argument, the tax has not been
 
 suspended
 
 because the tax comes back to 5 cents in the absence of further proclamation; and, in truth, remains at 1 cent during the period of proclamation. Therefore, there has been no
 
 suspension
 
 of
 
 or surrender
 
 of “the taxing power” vested in the Legislature.
 

 Similarly, it is evident that the
 
 power
 
 of taxation was not
 
 contracted away,
 
 for it never is extinguished and arises anew to its maximum at the expiration of each proclamation.
 

 (4) It is provided by section 13 of article 4 of the Constitution that: “The Legislature shall have no power to release or extinguish, or to authorize the releasing or ex-tinguishment, in whole or in part, of the indebtedness, liability or obligation of any corporation or individual to the State, or to any parish or municipal corporation thereof.”
 

 The Attorney General contend^ that the Legislature has no power to remit the payment of the tax in this case.
 

 House Concurrent Resolution No. 1 became effective on its final passage by the Legislature, by the concurrence of the Senate on March 1, 1935.
 

 
 *311
 
 On March 2, 1935, the Governor issued his proclamation suspending the law as authorized for a period of 8 months, from January 9, 1935, the effective date of Act No. 15 of the Third Extra Session of 1934, which levies an annual tax of 5 cents per barrel on the business of refining oil, etc., payments to be made quarterly.
 

 Act No. 5 of the First Extra Session of 1935, § 2, adding section 41
 
 y2
 
 to Act No. 15 of the Third Extra Session of 1934, did not go into effect until March 22, 1935. By assuming that the tax
 
 accrued, from day to day,
 
 it is contended by the Attorney General that, even admitting the validity of the Concurrent Resolution and of Act No. 5,
 
 the tax accrued
 
 from January 9, 1935, to March 22,1935. The supervisor of public accounts, in her answer, asserts, to the contrary, that the tax imposed by Act No. 15 of the Third Extra Session of 1934
 
 is a quarterly tax,
 
 and does not
 
 become due and payable from day to day,
 
 but only becomes
 
 due and payable at the end of each quarter,
 
 March 31, 1935, etc.
 

 It is provided in the act that the tax levied is
 
 “an annual occupation-license Or privilege tax, to be paid and collected quarterly
 
 as hereinafter provided,
 
 in the amount and to be calculated, computed, measured, and ascertained,”
 
 and “shall be computed according to
 
 the amount of products * * *
 
 at the rate of five cents (5$) per barrel of forty-two (42) gallons.” Section 41 (a) and (b), Act No. 15 of the Third Extra Session of 1934.
 

 It is further provided that “Every person, firm, association of persons, partnership, or corporation,” subject to the tax, “shall, within thirty (30) days
 
 after the expiration of each quarter-annual period expiring, respectively,
 
 on the last day of March, June, September and December of each year,
 
 file loiih the Supervisor of Public Accounts a statement, under oath on forms prescribed by him,
 
 of the business and operations conducted * * * during the last preceding quarter-annual period, or part of quarter-annual period,
 
 showing the amount
 
 of products of petroleum, crude oil, or products thereof so manufactured, refined or distilled;
 
 the amount, quantity and number of barrels
 
 of products of petroleum, crude oil,
 
 or products thereof obtained thereby or produced therefrom; the locations,'capacities and methods of his, its, or their respective plants,
 
 and any and all such other
 
 reasonable and necessary information
 
 pertaining thereto, as the Supervisor of Public Accounts
 
 may require for the proper enforcement of the provisions of this act.”
 
 Section 41 (f) of Act No. 15, Third Extra .Session of 1934. (Italics ours.)
 

 It is further provided in paragraph (g) of the above act:
 
 “That at the time of rendering such quarter-annual report■
 
 each such person, firm, association of persons, partnership or corporation
 
 shall pay
 
 to the Supervisor of Public Accounts
 
 the occupation-license or privilege tax,
 
 calculated, computed, measured
 
 and ascertained in the manner hereinabove provided.”
 
 (Italics ours.)
 

 Considering the above provisions of the act, the contention of the supervisor of public accounts that the tax does not accrue day by day, but becomes due and payable at the end of each quarter, is, in our opinion, clearly correct, for the tax is not even
 
 ascertainable
 
 before that time.
 

 We do not find Succession of Popp, 146 La. 464, 83 So. 765, 26 A. L. R. 1446, relied upon
 
 *313
 
 by the Attorney General, contrary to the conclusion which we have reached.
 

 In that case Mrs. Popp died in Mississippi, where she and her husband were residing,
 
 in 1910,
 
 leaving property situated in Louisiana, consisting of securities. The state of Louisiana sought to collect
 
 an inheritance tax
 
 from her husband, and the case involved the reduction of this tax from 5 per cent., established by Act No. 109 of 1906, and reduced to 2 per cent, by Act No. 42 of 1912. Mrs. Popp died two years before the reduction had taken place, and, as an inheritance tax
 
 is imposed on the right to inherit, and becomes due and payable immediately on the death
 
 of the person from whom the inheritance descends, the tax claimed by the state in that case had already accrued under the 5 per cent, rate fixed by Act No. 109 of 1906. The decision in the Popp Case is correct, but is not applicable, for obvious reasons, to the ease at bar.
 

 Besides, the article and section of the Constitution, upon which the Attorney General bases his contention, means, in our opinion, that no isolated industry or individual •can be selected from the body politic and preferred with rebates or special advantages.
 

 In the instant case, the change of the tax from 5 cents to 1 cent is in favor of all persons or corporations engaged in business, as •defined in the statute.
 

 Furthermore, this is not, properly, a rebate of any tax, any more than it could be •said that the President of the United States was rebating a tax when he lowered the tariff. It is simply changing the basis of taxation, and leaving in abeyance that part which is not to the general public advantage, within the limits carefully circumscribed by the Legislature.
 

 It is certain that, with the tax changed from 5 cents to 1 cent per barrel, a new and fresh impetus will be given to the drilling of more oil wells within the state; that employment will be materially increased and bettered thereby; that depressed business will be invigorated and benefited; and that royalties also will be received by the owners of the newly developed mineral lands.
 

 (5) The Attorney General contends that the title of Act No. 5 of the First Extra Session of 1935, § 2, by which section 41% was added to Act No. 15 of the Third Extra Session of 1934, is not indicative of the object of the act, as required by article 3, § 16 of the Constitution, as
 
 new
 
 matter was contained in the amending act that- was not in the original, and that the title of the original act should have been amended.
 

 The
 
 title oí the
 
 original act, Act No. 15 of the Third Extra Session of 1934, is fully set forth in the title of the amending act, Act No. 5 of the First Extra Session of 1935, and its object is stated to be
 
 to amend and re-enact
 
 certain named sections of the original act,
 
 “and to add an additional Section
 
 to said Act No. 15 approved December 21, 1934, to be known as Section 41%, so as to authorize the Governor to suspend the operation of the provisions of Section 41 of said Act, and providing for the effect of any such suspension.” (Italics ours.)
 

 The
 
 new
 
 section 41%, added to Act No. 15 of the Third Extra Session of 1934, was not
 
 an amendment, but an addition to the
 
 original act.
 

 
 *315
 
 As section 41 of Act No. 15 of the Third Extra Session of 1934 was not
 
 amended
 
 by Act No. 5 of the First Extra Session of 1935, it was not necessary that the title of the original act should have been amended.
 

 It is not pretended that the
 
 new
 
 . added section is not germane to the original text, since it is obviously so; and it cannot be contended, even if the added matter were
 
 new
 
 matter, that it is not stated in the title of the amending act.
 

 We do not find, therefore, that the title of Act No. 5 of the First Extra Session of 1935 violates either article 3, § 16 of the Constitution, or article 3, § 17 of the Constitution, which provides that: “No law shall be revived
 
 or amended
 
 by reference to its title, but in such eases the act revived,
 
 or section as amended,
 
 shall be re-enacted and published at length.” (Italics ours.)
 

 Every section of Act No. 15 of the Third Extra Session of 1934 purported to be amended and re-enacted in the title of Act No. 5 of the First Extra Session of 1935, the amending act, was re-enacted and published at length in that act, as was the new added section 41%.
 

 We find no violation of either section of article 3 of the Constitution.
 

 “Legislators, as well as judges, are bound to obey and support the Constitution, and it is to be understood that they have weighed the constitutional validity of every act they pass.
 
 Hence the presumption is always in favor of the constitutionality of the statute.
 
 Every reasonable doubt must be resolved
 
 in favor of the statute, not against it; and the court will not adjudge it invalid
 
 unless its violation of the Constitution is, in-their judgment,
 
 clear, complete, and wnmistalcable."
 
 Black on Constitutional Law, p. 61. (Italics ours.)
 

 (6) Concurrent resolutions by the Legislature have long been a part of the state’s, judicial and legislative history.
 

 The Attorney General has himself ruled upon the power of the Legislature to suspend laws relating to the collection of taxes by concurrent resolution. (Opinions Attorney . General 1932-34, p. 956.) There he passed upon a definite suspension of such laws in their-entirety for a definite period by the Legislature itself by concurrent resolutions, which became Acts Nos. 2 and 3 of 1932.
 

 The Legislature of 1934 also,
 
 by concurrent-resolutions
 
 (Acts 1934, pp. 665, 666), suspended the laws relating to the collection of taxes in their entirety
 
 and for a definite period,.
 
 as in the instant case, which were also held to be valid by the Attorney General in opinions not yet published.
 

 Of course, the rulings of the Attorney General were based upon article 19, § 5 of the-present Constitution, which provides: “No-power of suspending laws of this State shall be exercised unless by the Legislature,
 
 or by its authority."
 
 (Italics ours.)
 

 As there are no constitutional provisions regulating the method of suspending a law, there is no prohibition against suspension by concurrent resolution. The right of the Legislature, therefore, to suspend, or to authorize the suspension of a law under article 19, § 5, would carry with it the right to make-suspension effective in .any way it sees fit, unless there was some constitutional pro-.i-
 

 
 *317
 
 sion to the contrary. It is familiar doctrine that the Legislature of a state, unlike Congress, which cannot do anything which the federal Constitution does not authorize, may do everything which the state Constitution does not prohibit. Hughes v. Murdock, 45 La. Ann. 935, 13 So. 182. Suspension in the case at bar, under the authority of a concurrent resolution, was therefore permissible.
 

 (7) The trial judge rendered and signed in open court the following judgment in this case: “It is ordered, adjudged and decreed that there be judgment in favor of the defendant, Alice Lee Grosjean, Supervisor of Public Accounts, and the intervenor, Standard Oil Company of Louisiana, and against the plaintiff, the State of Louisiana, declaring the House Concurrent Resolution No. 1 (Act No. 25) of the First Extraordinary Session of the Louisiana Legislature for the year 1935, section 2 of Act No. 5 of the First Extraordinary Session of the Louisiana Legislature for the year 1935, adding section 41% to Act No. 15 of the Third Extraordinary Session of the Louisiana Legislature for the year 1934, to be valid and constitutional; that there be further judgment in favor of the defendant, the Supervisor of Public Accounts, and the intervenor, Standard Oil Company of Louisiana, and against the plaintiff, the State of Louisiana, decreeing that the proclamation issued by the Governor of the State of Louisiana on the 2nd day of Miareh, 1935, suspending the tax levied by section 41 of Act No. 15 of the Third Extraordinary Session of the Louisiana Legis'ature for the year 1934 in excess of one cent per barrel for a period of eight months, beginning January 9, 1935 and ending September 9, 1935, to be valid, constitutional, legal and binding on the Supervisor of Public Accounts, prohibiting that officer from collecting more than one cent per barrel as an occupational license tax for the privilege of engaging in the business of refining, heating, cracking or distilling crude oil, petroleum or the products thereof, as provided for in section 41 of Act No. 15 of the Third Extraordinary Session of the Louisiana Legislature for the year 1934; that there be further judgment in favor of said defendant, the Supervisor of Public Accounts, and the said intervenor, the Standard Oil Company of Louisiana, against the plaintiff, the State of Louisiana, decreeing that section 2 of Act No. 5 of the First Extraordinary .Session of the Louisiana Legislature for the year 1935, adding section 41% to Act No. 15 of the Third Extraordinary Session of the Louisiana Legislature of the year 1934, to be valid, legal, and constitutional.
 

 “It is further ordered, adjudged and decreed that there be judgment in favor of the intervenor, Standard Oil Company of Louisiana, against the State of Louisiana, prohibiting the said State of Louisiana, the Supervisor of Public Accounts, or any other official of the State of Louisiana, from now or hereafter collecting or attempting to collect from the said intervenor, the Standard Oil Company of Louisiana, an occupational license tax in excess of one cent per barrel for engaging in the business of refining, heating, cracking or distilling crude oil, petroleum or the products thereof, as provided for in section 41 of Act No. 15 of the Third Extraordinary Session of the Louisiana Legislature for the year 1934 for the said eight months’ period, beginning January 9, 1935, and ending September 9, 1935.
 

 
 *319
 
 “It is further ordered, adjudged, and decreed that the rule herein issued be recalled, and that the plaintiffs suit be dismissed at its cost.”
 

 We find no error in the judgment from which the plaintiff, the state of Louisiana, has appealed.
 

 Judgment affirmed.
 

 O’NIELL, O. J., and ODOM, J., dissent