173 So.2d 192

STATE of Louisiana

v.

Homer "Tex" GUIDRY.

No. 47552.

March 29, 1965.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Bernard N. Marcantel, Dist. Atty., Alfred R. Ryder, Asst. Dist. Atty., for appellant.

Knight & Knight, Herschel N. Knight, Jennings, for defendant-appellee.

SANDERS, Justice.

The state charged Homer Guidry with criminal trespass in Jefferson Davis Parish on June 8, 1964, in violation of LSA–R.S. 14:63.5. After trial in the City Court of Jennings, the Court found him guilty.

Before sentence, the defendant filed a motion in arrest of judgment, asserting that LSA–R.S. 14:63.5, defining criminal trespass in Jefferson Davis Parish, violated Article I, Section 2, the due process clause, of the Louisiana Constitution, LSA, and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, since the statute applied only to Jefferson Davis Parish and not to the remainder of the state.

The City Court of Jennings declared LSA–R.S. 14:63.5 unconstitutional. The state appealed.[1]

In striking down the statute, the City Court of Jennings held that it was arbitrary, capricious, and discriminatory. We do not agree with this holding.

Under familiar principles of constitutional law, the validity of a statute is presumed. Moreover, the courts have a duty to uphold a law unless it clearly violates the federal or state constitutions.[2]

The burden of establishing the unconstitutionality of a statute rests upon the party who assails it. Thus, one who attacks the limited territorial scope or the classification of a statute has the burden of establishing that the restriction imposed by the Legislature has no rational basis. For the Court to nullify the statute, the record must show that no fair reason supports the legislative judgment.[3]

1. See Article VII, Section 10(2), Louisiana Constitution.

2. State v. Rones, 223 La. 839, 67 So.2d 99; Olivedell Planting Co., Inc. v. Town of Lake Providence, 217 La. 621, 47 So.2d 23; Interstate Oil Pipe Line Co. v. Guilbeau, 217 La. 160, 46 So.2d 113; State ex rel. Porterie v. Grosjean, 182 La. 298, 161 So. 871.
3. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485; Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369; 16 Am.Jur.2d Constitutional Law, § 172, p. 390, § 174, pp. 394–399.

The State Legislature exercises the entire legislative power of the state and, as to the state, may enact any legislation that the state constitution does not prohibit.[4]

In State ex rel. Labauve v. Michel, 121 La. 374, 46 So. 430, this Court stated:

"* * * [D]ifferently from Congress, which possesses only such powers as are delegated to it by the Constitution of the United States, the Legislature exercises the entire legislative power of the state, except in so far as some limitation has been imposed by the state Constitution, and that, therefore, for successfully assailing the constitutionality of any statute, it is necessary to point out some particular provision of the Constitution which has taken away from the Legislature the power to pass it."

■■ LSA–R.S. 14:63.5 defines criminal trespass in Jefferson Davis Parish and fixes penalties consisting of a fine or imprisonment or both. The gist of the offense is the unauthorized and intentional taking possession of or entry upon the property of another. It applies to both movable and immovable property as defined in the statute. The statute sets forth detailed definitions of "posted" land and "enclosed" property. The obvious purpose of the statute is to protect property against unauthorized invasion.

■ We find no provision in the State Constitution expressly prohibiting the Legislature from enacting criminal trespass statutes for one or more parishes or requiring state-wide uniformity. The defendant asserts, however, that the enactment of a separate criminal trespass statute for Jefferson Davis Parish produces an invidious discrimination, since the statute differs from the laws applicable to other parishes as to posting of the land and the sentence that may be imposed.[5] Separate treatment of the parish, the defendant urges, denies him the equal protection of the laws.

■ We find no merit in this argument. The equal protection clause relates to equality between persons as such, rather than between areas. Clearly, the guaranty of equal protection is not a demand that all state laws operate from boundary to bound-

4. Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49; State ex rel. Porteric v. Grosjean, 182 La. 298, 161 So. 871; State ex rel. Labauve v. Michel, 121 La. 374, 46 So. 430; Hughes v. Murdock, 45 La.Ann. 935, 13 So. 182.

5. The Legislature has fashioned the criminal trespass laws by areas composed of parishes, political subdivisions of the state. Act 54 of 1962 applies to Jefferson Davis Parish. Act 435 of 1964 applies to Bossier Parish. Act 458 of 1960, as amended, applies to the remaining parishes, but it divides them into two groups, with separate provisions for each group. The statute also authorizes the governing authorities of eleven parishes to adopt needful supplementary "Regulations" concerning trespass. See LSA–R.S. 14:63–64.

ary. It compels no state to adopt an iron rule of territorial uniformity for legislation. In the enactment of laws, the Legislature may consider the "needs and desires" of the various sections of the state without infringing equal protection.

In State of Missouri (Bowman) v. Lewis, 101 U.S. 22, 25 L.Ed. 989, the Supreme Court of the United States stated:

"The 14th Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. * * * If diversities of laws and judicial proceedings may exist in the several States without violating the equality clause in the 14th Amendment, there is no solid reason why there may not be such diversities in different parts of the same State. A uniformity which is not essential as regards different States cannot be essential as regards different parts of a State, provided that in each and all there is no infraction of the constitutional provision. Diversities which are allowable in different States are allowable in different parts of the same State."

In Fort Smith L. & T. Co. v. Board of Imp. of Paving Dist., 274 U.S. 387, 47 S. Ct. 595, 71 L.Ed. 1112, the Supreme Court again stated:

" * * * The Fourteenth Amendment does not prohibit legislation merely because it is special, or limited in its application to a particular geographical or political subdivision of the state."

See also Ocampo v. United States, 234 U.S. 91, 34 S.Ct. 712, 58 L.Ed. 1231; Gardner v. People of The State of Michigan, 199 U.S. 325, 26 S.Ct. 106, 50 L.Ed. 212; Hayes v. State of Missouri, 120 U.S. 68, 7 S.Ct. 350, 30 L.Ed. 578; State ex rel. Civello v. City of New Orleans, 154 La. 271, 97 So. 440, 33 A.L.R. 260; and 16 Am.Jur.2d, Constitutional Law, § 510, pp. 893–895.

■ The rich diversities in the land, people, and culture of Louisiana are matters of common knowledge. They have been celebrated in song and story. Many of these are deeply rooted in history. The rural-urban diversity is but one of several that affect trespass laws. The variegated patterns of topography and land-use militate against state-wide uniformity in trespass legislation.

■ The defendant has assailed the statute by motion in arrest of judgment, directed only at defects patent upon the face of the record. LSA–R.S. 15:517. He, of course, has made no showing that the relevant conditions and needs in Jefferson

Davis Parish are the same as those of the other parishes. See McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393. The Court cannot assume the absence of differences when there is no proof. Ft. Smith L. & T. Co. v. Board of Imp. of Paving Dist., supra.

The defendant relies mainly upon the recent decision of the United States Supreme Court in Griffin v. County School Board of Prince Edward County, 375 U.S. 391, 84 S.Ct. 400, 12 L.Ed.2d 256 (1964). There the Court held that the closing of the public schools in one county of Virginia, where private schools operated with governmental assistance, denied the negro school children living in the county the equal protection of the laws. But the Court based its holding upon a specific finding that the sole purpose of the state action was to enforce racial segregation in the school system. Hence, the decision is inapposite.

We conclude that the attack upon LSA–R.S. 14:63.5 is without merit and hold the statute constitutional.

For the reasons assigned, the judgment of the City Court of Jennings is reversed; the motion in arrest of judgment is overruled; and the case is remanded to the City Court of Jennings for the imposition of sentence and further proceedings as provided by law.